**In re BH & P, INC., Debtor.**

**In re Philip Alan HERMAN, Debtor.**

**In re Bruce BERKOW, Debtor.**

**Bankruptcy Nos. 86–02263, 87–00687 and 87–05731.**

United States Bankruptcy Court, D. New Jersey.

Aug. 11, 1989.

Gary N. Marks, Ravin, Greenberg & Zackin, P.A., Roseland, N.J., for trustee.

Jeffrey Feld, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, N.J., for Bederson & Co.

Alvin S. Goldstein, Emmet, Marvin & Martin, New York City, for Bank of New York.

Joseph J. Mania, Office of the U.S. Trustee, Newark, N.J.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the court as a result of an objection by the Bank of New York ("BNY"), a creditor, to interim fee applications filed in the BH & P case by Carmen J. Maggio, trustee ("Maggio" or "the trustee"), Ravin, Greenberg & Zackin, P.A., attorneys for the trustee ("Ravin, Greenberg"), and Bederson & Company, accountants for the trustee ("Bederson"). The grounds for the objection include the assertion that the applicants have conflicts of interest which require denial of compensation to them. On April 24, 1989 the court entered an order denying the fee applications without prejudice and scheduling proceedings on the alleged conflicts of interest. Pursuant to that order, certifications and briefs were filed and oral argument was heard on June 12 and 22, 1989. In addition, testimony was taken on June 22, 1989. This opinion shall constitute the court's findings of fact and conclusions of law.

## I.

Prior to the filing of its chapter 11 petition on April 14, 1986, BH & P, Inc. ("BH & P"), one of the debtors in these jointly administered cases, was a manufacturer of credit cards and also engaged in direct mailing and telemarketing. The trustee has concluded that the filing was caused primarily by the loss of a lucrative contract under which BH & P provided services to AT & T.

Initially BH & P operated as a debtor in possession. On June 2, 1986 an order was entered authorizing the retention of Ravin, Greenberg as attorneys for the creditors committee. By October, 1986 BH & P had ceased operations and had sold a substantial part of its assets. On November 10, 1986 an order was entered converting the case to chapter 7. That order was stayed pending appeal. The District Court dismissed the appeal, and the United States Trustee appointed Maggio as chapter 7 trustee on January 27, 1987. On February 20, 1987 an order was entered authorizing the trustee to retain Ravin, Greenberg as his attorneys. On March 6, 1987 an order was entered authorizing the trustee to retain Bederson as his accountants.

The two principals of BH & P were Bruce Berkow ("Berkow"), who owned 90% of the stock and was vice president of the corporation, and Philip Alan Herman ("Herman"), who owned 10% of the stock and was president. On February 9, 1987 Herman filed a petition for relief under chapter 7. The United States Trustee appointed Maggio as trustee in the Herman case. The United States Trustee recommended that the trustee retain Ravin, Greenberg as his attorneys, and Bederson as his accountants. Maggio submitted applications to retain the attorneys and accountants in the Herman case, which stated that because of the relationship between the BH & P and Herman cases, the professionals were familiar with the issues which had to be addressed. The application to retain the accountants added that they would investigate irregular transfers of assets and potential causes of action. The professionals and the trustee certified that there would be no conflict of interest in retaining the professionals in the Herman cases. An order was entered on April 20, 1987 authorizing retention of Ravin, Greenberg, and an order was entered on June 29, 1987 authorizing retention of Bederson.

On June 9, 1987 the trustee filed an application for an order authorizing joint administration of the BH & P and Herman cases. The application stated that the debtors' financial affairs were closely related, Herman had interests in entities involved in significant and allegedly questionable business transactions with BH & P, and the creditors of each debtor overlap to a large extent. It was alleged that joint administration would promote convenience and reduce costs of administration. On July 7, 1987 an order was entered authorizing joint administration. The order further provided that it did not constitute substantive consolidation of the estates, and that any party in interest could move for such consolidation, or for modification of the order.

On September 18, 1987, Berkow, the other principal of BH & P, filed a petition for relief under chapter 7. The United States Trustee appointed Maggio as trustee of the Berkow case, and again recommended retention of Ravin, Greenberg as attorneys and Bederson as accountants. The applications to retain the attorneys and accountants in the Berkow case basically repeated the statements which had been made in the applications to retain them in the Herman case, and certifications were again submitted that there would be no conflict of interest. An order was entered on October 27, 1987 authorizing the trustee to retain Ravin, Greenberg. An order was entered on November 13, 1987 authorizing retention of Bederson.

The trustee filed a motion on November 11, 1987 for joint administration of all three cases. The application in support of the motion recited part of the above procedural history and repeated the statements made in the previous application for joint administration of the BH & P and Herman cases. The motion was granted, and an order was entered on December 14, 1987 authorizing

joint administration of all three cases, on terms identical to those of the first order for joint administration. Thus, as of December 14, 1987 the BH & P, Herman and Berkow cases were being jointly administered by the same trustee, attorneys and accountants.

The trustee failed to disclose to the court in his applications to retain the professionals in the Herman and Berkow cases or in the applications for joint administration that because of his previous involvement in the BH & P case, he knew from the outset of the Herman and Berkow cases that BH & P had substantial claims against Herman and Berkow, including claims for transfers from BH & P within a year of its bankruptcy petition of approximately $1.7 million into seven real estate tax shelters of which Herman and Berkow were the sole limited partners.[1]

At the initial hearing on March 23, 1989 regarding the interim fee applications, at which the court denied the applications without prejudice and scheduled a hearing on the conflicts issues, the court specifically directed that certifications were to be filed by the trustee, attorneys and accountants as to any discussions among themselves or with anyone else regarding conflicts. The certification filed by the accountant is silent as to whether there were such discussions, and thus did not comply with the court's order in that regard. The trustee and the attorney filed certifications stating that they recalled a discussion with the United States Trustee at the inception of the Herman case as to whether their involvement in that case would create a conflict with their duties in the BH & P case. Paragraph 18 of the affidavit of Gary Marks, Esq. ("Marks") filed May 15, 1989 states that prior to Ravin, Greenberg's retention as attorneys in the Herman case, Marks had a telephone conference with the Honorable Hugh M. Leonard, United States Trustee, "with respect to potential conflicts of interest which might arise" during the administration of the Herman and BH & P cases. Mr. Leonard

stated that this was a common situation, and that it was his policy to move forward with a single trustee and attorney until an actual conflict presented itself. If such a situation developed, a decision would be made as to appointing a substitute trustee and attorney. In Mr. Leonard's view, this approach would balance the need for independent fiduciaries and professionals against the administrative burdens caused where multiple trustees and attorneys may be duplicating each other's efforts. Mr. Leonard has since resigned. His successor, the Honorable Harold D. Jones, Acting United States Trustee, has essentially confirmed that statement of Mr. Leonard's position and adopted it himself in his letter memorandum filed June 2, 1989 in support of the trustee's position on the conflicts issues.

However, no mention is made in the certifications filed by Marks and Maggio as to the reason for the discussion with the United States Trustee regarding conflicts, or as to any further details. The court was not informed of the substance of the conversations regarding conflicts which occurred at the inception of the Herman case until the initial hearing in this matter on June 12, 1989, when I specifically asked Marks whether he knew at that time that BH & P had claims against Herman and Berkow, and whether he had discussed such claims with the United States Trustee. Marks then admitted that he did know of the claims, and did discuss them with Mr. Leonard. Marks reiterated that in his testimony on June 22, 1989.

Mr. Edward Bond ("Bond"), who testified on June 22 on behalf of Bederson and who had previously submitted two certifications on the conflicts issue, noted in his testimony that although he was not aware of the existence of claims by BH & P against Herman and Berkow or of any discussions about them at the inception of the Herman case, another accountant with Bederson, Timothy King ("King"), was primarily responsible for these three cases. Marks testified that although he did not recall any

---

1. Further, both Herman and Berkow listed BH & P as a creditor in their schedules, with no amount stated. Herman also listed Maggio as a creditor.

specific discussion with King about the claims in question at that time, he believed there may have been such discussions, and that in any event King probably knew of the claims.[2]

To summarize the above procedural history regarding disclosure to the court of information regarding conflicts: the applications for retention of professionals and for joint administration in the Herman and Berkow cases made no mention of the claims by BH & P against those debtors, or the discussions with the United States Trustee regarding conflicts; the certifications filed by the trustee and Ravin, Greenberg pursuant to the court's order failed to disclose the reason for the discussions or any details; and the certification filed by Bederson failed to respond to the court's order at all, and was not from the accountant at Bederson with knowledge of the relevant facts.

The court finds from that procedural history and from the testimony and documentary evidence that Maggio, Ravin, Greenberg and Bederson knowingly and intentionally withheld disclosure in the applications to retain the professionals in the Herman and Berkow cases of the fact that BH & P, and Maggio as its trustee, had claims against Herman and Berkow, that Maggio and Marks had discussed the question of conflicts with the United States Trustee, and that they all knew of the claims. The court also finds that although the motivation of the United States Trustee for having the same trustee and professionals in all three cases may have been to reduce total fees, the motivation of the trustee and professionals for withholding disclosure of the conflicts question from the court was to increase their shares of the total fees by receiving three fees apiece rather than one.

## II.

On March 25, 1988, Maggio filed identical proofs of claim on behalf of BH & P

against both Herman and Berkow. The claims allege that Herman and Berkow transferred millions of dollars from BH & P to other entities and themselves in a manner resulting in claims for fraud, breach of fiduciary duty and conversion. No evidence was presented that Maggio, as trustee of Herman and Berkow, has taken any action regarding the claims which he filed as trustee of BH & P. However, there are assets in the estates of Herman and Berkow, including an interest in a partnership which owns real property which is to be sold with part of the net proceeds distributed to the Herman and Berkow estates. If there are sufficient assets to pay a dividend to unsecured creditors, Maggio as trustee of Herman and Berkow would have to determine the merits of the claim which he filed as trustee of BH & P.

## III.

It is as true today as it has always been that

> No man can serve two masters. Either he will hate one, and love the other; or else he will hold to one and despise the other.
>
> *Matthew* 6:24.

The provisions in the Bankruptcy Code and Rules prohibiting conflicts of interest are a corollary of this principle.

Code § 701(a)(1) requires that the person appointed by the United States Trustee to serve as trustee in chapter 7 cases shall be a "disinterested person." The same qualification is required by Code § 1104(c) when a trustee is appointed in chapter 11 cases. Code § 327(a) provides that the trustee, with the court's approval, may employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" as needed.

---

**2.** As previously noted, both Herman and Berkow listed BH & P as a creditor in their schedules, and Herman also listed Maggio. It is obvious that a professional person cannot truthfully certify that he, she or it is a disinterested person, and does not hold or represent an interest adverse to the estate as required by Bankruptcy Code § 327(a) and Bankruptcy Rule 2014(a), without first reviewing the debtor's schedules and discussing any possible conflicts with the trustee.

Code § 101(13) defines a "disinterested person" as one who

(A) is not a creditor ...

\* \* \* \* \* \*

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the debtor ... or for any other reason.

"Creditor" is defined by Code § 101(9)(A) as an entity that has a claim against the debtor that arose at or before the order for relief, which in the case of a voluntary petition is the petition itself. "Claim" is defined by Code § 101(4) as a right to payment of any nature. A bankruptcy trustee is the representative of the debtor's estate by virtue of Code § 323(a), with the capacity to sue and be sued. If an estate holds a claim against another person, such claim is an asset of the estate under Code § 541(a)(1), and the trustee is the person who holds it as the estate's representative and is authorized to prosecute it. A trustee of an estate which holds a claim against another estate is therefore a "creditor" of the latter estate as defined by Code § 101(9). See *In re Enercons Virginia, Inc.*, 812 F.2d 1469, 1472 (4th Cir.1987). If a trustee is a creditor of an estate, he or she is not a disinterested person as to that estate by virtue of Code § 101(13)(A). It follows that because Maggio is trustee of BH & P, he is not a disinterested person within the meaning of Code § 101(13)(A) as to the estates of Herman and Berkow, because he holds claims against those estates.

Even if it were assumed arguendo that Maggio was not a creditor of Herman and Berkow at the time of his appointment as trustee of their estates, he would still not be a disinterested person as defined by Code § 101(13)(E). That section states that one who has an interest materially adverse to the interest of the estate or of any class of creditors by virtue of any direct or indirect relationship to the debtor is not a disinterested person. As trustee of BH & P, Maggio has the right and duty to pursue the claims of BH & P against Herman and Berkow. Unless all creditors are paid in full, such claims are materially adverse to those of the other unsecured creditors of Herman and Berkow, because all allowed unsecured claims will share pro rata in any dividend from the estates of Herman and Berkow pursuant to Code § 726(a) and (b).

Since Maggio as trustee of BH & P is not a disinterested person as to the estates of Herman and Berkow by virtue of Code § 101(13)(A) and (E), his appointment in the Herman and Berkow cases violated Code § 701(a)(1). The fact that Maggio is not disinterested is cause for his removal as trustee in the Herman and Berkow cases under § 324(a), and he is removed as trustee in those cases, but not in the BH & P case.

Code § 324(b) provides that when the court removes a trustee under § 324(a), such trustee is thereby removed in all other cases unless the court orders otherwise. Although the conflict of interest here is a serious matter, the court will take into account that the trustee relied upon the opinion of the United States Trustee that there was no conflict. The court therefore orders that the trustee's removal in this case shall not in itself cause his removal in any other cases on the record presently before the court.

IV.

The same high standard of integrity and impartiality which is required of the trustee is also required of any professionals who the trustee employs. Code § 327(a) provides as follows:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Code § 327(a) imposes a two-part test for ascertaining whether a professional is qualified for employment by a trustee or debtor

in possession. The professional must not "hold or represent an interest adverse to the estate" and must be a "disinterested person." As previously noted, Code § 101(13) defines "disinterested person." The Code does not define "interest adverse to the estate." However, under Code § 101(13)(E) a disinterested person is one who "does not have an interest materially adverse to the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to ... the debtor ... or for any other reason."

Comparison of § 327(a) and § 101(13)(E) reveals that "hold ... an interest adverse to the estate" in § 327(a) is essentially synonymous with "have an interest materially adverse to the estate" in § 101(13)(E). Because a professional must be a disinterested person under § 327(a), inclusion in that section of the words "hold ... an interest adverse to the estate" is redundant. *In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bkrtcy.D.N.J.1988).

However, the additional requirement in § 327(a) that a professional employed by a trustee cannot "represent an interest adverse to the estate" does add an additional prohibition which isn't incorporated in § 327(a) by reference from § 101(13)(E). Although "having" an interest and "holding" an interest are essentially synonymous, "having" an interest and "representing" an interest are not. "Having" and "holding" suggest that the professional is the legal or equitable owner of the interest, and "representing" suggests that the interest belongs to a client.

The significance of this distinction is that a professional employed by a trustee cannot *"have"* an interest materially adverse to the estate *or of any class "* of claims or equity interests by virtue of § 101(13)(E), and he or she cannot *"represent"* an interest adverse to the estate" either, by virtue of § 327(a) [emphasis added]. Unlike § 101(13)(E), § 327(a) does not explicitly prohibit a professional from simultaneously representing a trustee and an interest ad-verse to a particular class of debt or equity. However, representation of interests adverse to those of particular classes is dealt with in other subsections of § 327.

### A.

Code § 327(c) states:

In a case under chapter 7, 12 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

§ 327(c) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 [3] and the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986.[4] Prior to those amendments, § 327(c) provided:

In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

Thus, prior to the 1984 amendments, § 327(c) prohibited the simultaneous representation of a trustee and a creditor regardless of whether there was an actual conflict of interest. Now, "... something more than the mere fact of dual representation must be demonstrated if there is to be disapproval of engagement by the trustee." *2 Collier on Bankruptcy 15th Ed.,* paragraph 327.03(4), page 327–43. This is because experience has shown that in large cases, it is occasionally difficult to find competent counsel who does not already represent a creditor. Id. at 327–44. The 1984 amendments have reinstated the pre-Code Rule. Id. Under the Bankruptcy Act, a trustee could employ a professional who represented a creditor, but only where it was absolutely necessary to do so.

---

**3.** Pub.L. No. 98–353.

**4.** Pub.L. No. 99–554.

Former Rule 10–202(c)(2) provided that representation of a creditor or stockholder in a matter which might not become involved in the chapter X case "need not in itself" be deemed to affect the "disinterestedness" of an attorney. The Advisory Committee's Note to former Rule 10–206 stated that the exception contained in Rule 10–202(c)(2) *"is not meant to encourage the appointment of attorneys who represent a creditor or stockholder. If other competent attorneys are available, the trustee's attorney should be selected from that group. This exception should be utilized only in the case where there is real need."* Id at 327–45 and 46. [emphasis added].

### B.

Code § 327(c) now provides that disapproval of employment is mandatory where there is an "actual conflict of interest." The Code does not define this term. By utilizing it, Congress elected to add terminology which, although familiar to courts, lawyers and to some extent, the public, is nevertheless slightly different from the Code's other terminology relating to this issue, i.e., "disinterested," "adverse interest" and "materially adverse interest." Each of these terms adds slightly different nuances to the analysis. However, the concept of conflict of interest is perhaps the common denominator of them all.

Black's Law Dictionary defines "conflict of interest" as a term used in connection with public officials and fiduciaries and their relationship to matters of private interest or gain to them. On this level, the meaning of the term is obvious. It describes a situation where interests privately held or represented by an official or fiduciary are adverse to those held or represented in one's fiduciary capacity.

The distinction between actual and potential conflicts of interest is more troublesome. The distinction is significant because § 327(c) expressly prohibits only actual conflicts of interest. In some cases, it is easy to define a conflict as "actual," i.e., involving an active competition between two interests, in which one interest can

only be served at the expense of the other. A good example of this is found in *Star Broadcasting, Inc.,* supra. In that case, an individual debtor and a corporation of which she was sole owner filed one disclosure statement and plan. The individual had claims against the corporation, and proposed to waive them as part of the plan. Judge Gambardella summarized the dilemma as follows:

> In the first instance, if Shenfeld [the individual debtor] waives her claims against SBI [the corporate debtor], her estate is lessened in value from which her creditors may collect and SBI's estate is increased in value since they would not have to pay Shenfeld her purported claim. Conversely, if Shenfeld does not waive her claim against SBI and succeeds in collection thereof, her estate is enhanced and SBI's estate is lessened. Therefore it is this court's determination that an actual conflict exists in Cole, Schotz' dual representation of SBI and Shenfeld.

Id. at 841.

On the other hand, *In re Glenn Electric Sales Corporation,* 89 B.R. 410 (Bkrtcy.D. N.J.1988), *aff'd,* 99 B.R. 596 (D.N.J.1988), arguably is an example of a potential conflict. In that case, a debtor in possession's attorney was paid its retainer in the bankruptcy case by an affiliate of a creditor which had stated an intention to propose a plan of reorganization. No such plan had been proposed yet. However, Judge Moore concluded that "once the facts are known ... the potential for conflict is clear." Id. at 418.

The terms "actual" and "potential" conflict merely describe different stages in the same relationship. As previously noted, an actual conflict can be defined as an active competition between two interests, in which one interest can only be served at the expense of the other. A potential conflict can then be defined as one in which the competition is presently dormant, but may become active if certain contingencies occur.

There are two basic reasons why actual and potential conflicts should generally not

be treated differently. First of all, even where a conflict is only "potential," i.e. dormant, it is possible that the prospect of future active competition between the interests in question will exert a subtle influence over the manner in which events develop to set the stage for an active competition. To put it more bluntly, the existence of a "potential" conflict can change circumstances so that the deck is stacked by the time the conflict becomes "actual." Human nature is such that this can occur even if the person with the conflict attempts in good faith to represent both interests fairly. Secondly, when a "potential" conflict does become "actual," the court is faced with the difficulty and delay attendant upon disqualification of trustees and professionals in midstream. This can cause serious problems which could have been avoided if a professional without a "potential" conflict had been employed from the outset.

To further erode the attempted distinction between actual and potential conflicts, the Court must address timing problems. That is, what is the Court to do when a "potential?" conflict becomes "actual"? If such conflict arises near the conclusion of the case, the Court would face several unattractive options; appointment of a trustee with the associated expense, removal of counsel for the Debtor with possible implications on the opportunity to reorganize, or continuation of the case with a conflict. For these reasons, this Court is skeptical that there can be a mere "potential" conflict in a bankruptcy situation. Even a possibility of conflict may warrant disqualification. *In re Roger Au & Son, Inc.*, 64 B.R. 600, 606 (N.D.Ohio 1986). Likewise, if there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification. *In re Johore Investment Company*, 49 B.R. 710, 713 (Bankr.D.Hawaii 1985). *In re Michigan General Corp.*, 78 B.R. 479, 484 (Bkrtcy.N.D.Tex.1987), *aff'd in part, reversed and remanded in part on other grounds sub nom. Diamond Lumber v. Unsecured Creditors' Committee*, 88 B.R. 773 (N.D.Tex.1988). The same

judge subsequently stated with greater certainty:

> The concept of *potential* conflicts is a contradiction in terms. Once there is a conflict it is *actual—not potential.*

*In re Kendavis Industries Intern., Inc.*, 91 B.R. 742, 754 (Bkrtcy.N.D.Tex.1988) (emphasis in original).

Code § 327(c) does refer, of course, only to actual conflicts. However, it does not follow from the principle that disapproval of employment is mandatory where there is an actual conflict, that there is no discretion to disapprove employment where the conflict is "potential." For the reasons discussed above, the court should generally disapprove employment of a professional with a potential conflict, with certain possible exceptions. First of all, as previously noted, there may occasionally be large cases where every competent professional in a particular field is already employed by a creditor or party in interest. These cases will be rare, in view of the number of competent professionals practicing in bankruptcy today. Further, there is no reason why a professional from the surrounding states could not be employed in such situations. The bankruptcy courts in this state often admit attorneys from other states, *pro hac vice.* Admission of a professional on that basis because all competent New Jersey professionals have conflicts would be at least as meritorious a reason for such admission as the reasons usually offered.

The other exception is where the possibility that the potential conflict will become actual is remote, and the reasons for employing the professional in question are particularly compelling. This court will not attempt here to define the parameters of this exception, which necessarily will depend upon the facts of a particular case. I will, however, note that even in such situations, employment of a professional with a potential conflict is disfavored. Although special counsel can sometimes be used to review claims by or against a particular creditor or party in interest, that option should generally be reserved for cases in which no other competent professional is available, or for other compelling reasons.

The court has not overlooked the fact that § 327(c) provides that action on a question of conflicts shall be taken if there is an objection by a creditor or the United States Trustee. This, of course, does not preclude the court from raising objections *sua sponte*, which is authorized by § 105(a). One noteworthy example of a case in which a court apparently raised an objection to a conflict *sua sponte* is *In re Michigan General Corp.*, supra. This court will also raise questions of conflict *sua sponte* where they are noticed. The integrity of the Bankruptcy Court requires no less.[5]

### C.

Code § 327 does not suggest that its standards should vary from profession to profession, and there is no reason to believe that accountants should be subject to less stringent standards than lawyers. Here the duties of Bederson in all three cases include investigation of irregular transfers of assets and potential causes of action. It is difficult to see how an accountant employed by all three estates for those purposes could be any more objective than a lawyer who would have to simultaneously prosecute and defend against any causes of action which the accountant discovered. The fact that such an accountant would be employed by both the plaintiff and the defendants, and could theoretically be called to testify by both sides in support of their respective positions, illustrates that the accountant's conflict is just as real as the attorneys.

The case of *In re Michigan General Corp.*, supra, 77 B.R. at 107, takes the position that the differences between the functions of attorneys and accountants justify a less stringent standard for accountants as to dual employment. To that extent, this court disagrees with *Michigan General Corp.* The cases are arguably distinguishable on the grounds that there does not appear to have been any duty to investigate potential causes of action in *Michigan General Corp.* However, that argument doesn't have to be made, because Code § 327 does not offer a less stringent standard for accountants.

As for Ravin, Greenberg, it has had to assert claims on behalf of Maggio as trustee of BH & P, against Maggio as trustee of Herman and Berkow. If there are sufficient assets in the estates of Herman and Berkow, Ravin, Greenberg will have to form an opinion on behalf of those estates as to the merits of those claims. It is also conceivable that the estates of Herman and Berkow might have claims against each other, or against BH & P, although the court isn't aware of any at this time.

An argument could be made that there is only a potential conflict until it is certain that the estates of Herman and Berkow have sufficient funds to pay a dividend. However, the more the trustee and professionals succeed in increasing the size of the Herman and Berkow estates, the greater the likelihood that they would be in the impossible position of having to review their own claims on behalf of BH & P.

---

**5.** There is also a question as to whether an appearance of impropriety is a separate basis for disapproval of employment. It has heretofore been a separate basis. *Nolan v. Judicial Council of the Third Circuit*, 346 F.Supp. 500, 504–506 (D.N.J.1972), *aff'd in part and remanded sub nom. In re Imperial "400" Nat'l, Inc.*, 481 F.2d 41 (3d Cir.), *reh'g denied*, 486 F.2d 297 (3d Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 71, 38 L.Ed.2d 125 (1973); *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385–1386 (3d Cir.1972), *cert. denied*, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *In re Glenn Electric Sales Corp.*, 89 B.R. 410 (Bkrtcy.D.N.J.1988). However, in the District Court letter opinion affirming the decision in *Glenn Electric*, it was noted that because the ABA Rules have abandoned the concept of appearance of impropriety, it is arguable that such appearance is no longer a separate basis for disqualification. *In re Glenn Electric Sales Corporation*, 99 B.R. 596 (D.N.J.1988).

This court believes that the appearance of impropriety is a separate and distinct basis for disqualifying a professional or fiduciary, whether the ABA agrees or not. In a time when lawyers, fiduciaries and even judges are sometimes convicted of crimes arising from various types of breach of fiduciary duty, and when lawyers consistently rank at the same level as used car salesmen in public opinion polls as to the integrity of various occupations, the courts have a duty to encourage public confidence in the integrity of the judicial system wherever possible.

That problem certainly does not appear conducive to putting forth one's best efforts on behalf of the Herman and Berkow estates, if success ultimately means disqualification. The court does not have any evidence at this point that the trustee or professionals have failed to pursue all assets of the Herman and Berkow estate vigorously. However, the dilemma attendant upon successful recovery of assets here underscores the fact that the distinction between potential and actual conflicts is elusive and perhaps illusory.

### D.

■■■ The court concludes from the foregoing that where an attorney or accountant for a trustee also represents or is employed by a creditor, such professional has a conflict of interest. Where the conflict is "actual," i.e. the competition between interests is active, disqualification of the professional is required by § 327(c). Where the conflict is "potential," i.e. the competition between interests is dormant, disqualification is within the discretion of the court. This court will exercise its discretion to disqualify professionals from simultaneously representing a trustee and a creditor unless no other competent professional is available, or the likelihood that the potential conflict will become actual is remote and the reasons for employing the professional in question are particularly compelling.

■■ In these cases, there are assets in the Herman and Berkow estates, which may ultimately be sufficient to pay a dividend to unsecured creditors. Under these circumstances, Ravin, Greenberg and Bederson have an actual conflict of interest, and they are therefore removed as attorney and accountant for the trustee in the Herman and Berkow cases, but not the BH & P case.

### V.

■■ A professional who serves conflicting interests in a bankruptcy case may be denied compensation. In the seminal case of *Woods v. City Nat. Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) *reh'g denied*, 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941), counsel to the creditors committee in a case under Chapter X of the Bankruptcy Act was also counsel to the indenture trustee. The District Court disallowed the claim of the indenture trustee for the services of its counsel because of the conflict of interest. The Court of Appeals reversed because there was no conspiracy to defraud nor substantial evidence of mismanagement or negligence. The Supreme Court reversed the Court of Appeals.

> Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. Cf. *Jackson v. Smith*, 254 U.S. 586, 589, 65 L.Ed. 418, 424, 41 S.Ct. 200 [202 1921]. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases."

Id., 312 U.S. at 268, 61 S.Ct. at 497.

The Court went on to emphasize that where there is an actual conflict of interest, that fact alone is a sufficient basis for the bankruptcy court to deny compensation:

> The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

Id.

### A.

Code § 328(c) authorizes denial of compensation to a professional with a conflict of interest:

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Bankruptcy Rule 2014 requires that an application to retain a professional must be accompanied by a verified statement disclosing all of the professional's connections with any parties in interest. All facts relating to a question of actual or potential conflict must be disclosed:

> [C]ounsel should not petition the court for employment unless counsel conscientiously believes that there are no conflicts or that potential conflicts are outweighed by other legally cognizable factors. In situations where counsel is aware of apparent conflicts which counsel believes are outweighed by other factors, the conflicts must be disclosed. The court then can exercise its independent judgment. The decision concerning the propriety of employment should not be left exclusively with counsel, whose judgment may be clouded by the benefits of the potential employment.

*In re Roberts*, 75 B.R. 402, 411 (D.Utah 1987); see also *In re Glenn Electric Sales Corp.*, supra.

■ Because of what has occurred in these cases, the court must also note that the decision as to whether a professional has a conflict is not for the United States Trustee to make, any more than it is for the professional or the trustee. The United States Trustee does have the right and obligation to form an opinion as to whether or not there is a conflict, but the decision is the court's. All relevant facts must be disclosed to the court in the application to retain a professional, and it is blatantly improper for a trustee or professional to disclose less to the court than is disclosed to the United States Trustee.

If an attorney breaches the duty to disclose all facts relating to a question of conflict, the attorney performs services at his peril. *In re Coastal Equities, Inc.*, 39 B.R. 304, 309 (Bkrtcy.S.D.Cal.1984). The same rule applies to an accountant. *In re Gray*, 64 B.R. 505 (Bkrtcy.E.D.Mich.1986). Further, a court may deny compensation and reimbursement even in the absence of an actual conflict of interest. *In re WPMK, Inc.*, 42 B.R. 157, 163 (Bkrtcy.D. Hawaii 1984); *In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643, 653 (Bkrtcy.W.D.Wash.1986).

■ In these cases, the professionals breached their duty to disclose at the inception of the Herman and Berkow cases that they represented someone with claims against Herman and Berkow, and that they had discussed that fact with the United States Trustee. Then, after the matter was brought to the court's attention, and the professionals were directed to provide certifications as to their communications between themselves and the United States Trustee regarding the conflicts question, Ravin, Greenberg provided incomplete information regarding the communications and Bederson provided none at all. The court concludes that the professionals shall be denied compensation and reimbursement in the Herman and Berkow cases because of their willful breach of the duty of disclosure.

### B.

Code § 326(d) authorizes denial of compensation to a trustee for intentional or negligent employment of a professional with a conflict of interest:

> The court may deny allowance of compensation for services or reimbursement of expenses of the trustee if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title or, with knowledge of such facts, employed a professional person under section 327 of this title.

Neither § 326(d) nor any other section of the Code provides for denial of compensation to a trustee for reasons other than intentional or negligent employment of a professional with a conflict. However, § 324 provides for removal of a trustee for cause, and the court has discretion to deny compensation to a trustee for causes other than the one set forth in § 326(d). Some types of cause for removal of a trustee are more serious than employment of a professional with a conflict. A trustee who failed to obey various court orders, who misrepresented facts and who had been convicted of embezzlement and perjury in connection with another bankruptcy case was denied compensation, removed as trustee and disbarred from practicing in the Bankruptcy Court in *In re Derryberry*, 72 B.R. 874 (Bkrtcy.N.D.Ohio 1987). Self-dealing by a trustee is also cause for denial of compensation. *In re Redman*, 69 B.R. 27 (Bkrtcy. D.Hawaii 1986). In *In re Paolino*, 80 B.R. 341 (Bkrtcy.E.D.Pa.1987), the trustee did not have a conflict of interest when he was appointed, but he later became affiliated with a law firm which represented a creditor. He was denied compensation for services rendered after the conflict arose. There are undoubtedly other grounds for denial of compensation to a trustee as well. It is probable that virtually any grounds which are sufficiently serious to remove a trustee for cause are also sufficient to deny him or her compensation.

In these cases, Maggio is not a disinterested person as to the Herman and Berkow cases because he is a creditor in those cases. He failed to disclose the conflict to the court in his applications to retain Ravin, Greenberg and Bederson in the Herman and Berkow cases. He also failed to comply fully with the court's order to disclose the substance of his communications with others regarding conflicts at the commencement of the Herman and Berkow cases. Each of these facts is in itself sufficient cause to deny Maggio compensation in the Herman and Berkow cases, and he is therefore denied compensation in those cases.[6]

## C.

The trustee, attorney and accountant should know that the court considered removing them and denying them compensation in the BH & P case as well. However, I decline to do that on the record before me at this time for several reasons. First of all, removing them from the Herman and Berkow cases resolves the conflict. Second, denying them compensation in the Herman and Berkow cases punishes them for breaching the duty to disclose the conflict. Third, they relied upon the opinion of the United States Trustee that there wasn't any conflict. And fourth, in circumstances where the conflict is between or among positions in related bankruptcy cases, removing the parties and denying them compensation in all of the cases seems to be a remedy more appropriately reserved for more serious offenses than those committed here.

However, the court is concerned as to whether the conflicts in these cases have adversely affected any of the cases. As previously noted, on the record before the court at this time, no harm is apparent. The trustee, attorney and accountant will nevertheless have a greater burden than would otherwise be required of justifying all of their actions, and any pertinent inactions, to receive the compensation which they are seeking in the BH & P case. The court also reserves the right to take any other action which is necessary or appropriate as the record develops.

6. Although Code § 701(a)(1) and § 1104(c) require that a trustee must be a "disinterested person," it has not been the practice in this district for trustees to submit affidavits of disinterestedness to the court and to obtain rulings on that issue at the time of their appointment. Court approval of the person appointed as trustee by the United States Trustee is required in chapter 11 cases, but not in chapter 7 cases.

The practice of not obtaining rulings on the disinterestedness of trustees should be reconsidered, for the protection of both the trustee and the estate. Where, as here, the trustee has a conflict of interest which comes to the court's attention, he will be disqualified, and he may be denied compensation, whether he was obligated to submit an affidavit of disinterestedness or not.

In the order entered on July 13, 1989 the trustee and professionals were stayed from filing applications for allowances in the BH & P case until ninety days after appointment of their replacements in the Herman and Berkow cases. Upon further reflection, the court has determined that no further applications for allowances are to be submitted by the trustee, attorney and accountant in the BH & P case until further order of the court or until the case is being closed, to permit more time for any adverse effects of the conflict on the estate of BH & P to come to light.

## VI.

There are two rules which require the court to consider possible conflicts of interest in joint administration of cases. Bankruptcy Rule 1015(b) states in pertinent part:

> If ... two or more petitions are pending in the same court by or against ... a debtor and an affiliate, the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest.

Bankruptcy Rule 2009(c) provides that when estates are being jointly administered, the court may appoint one or more trustees. Bankruptcy Rule 2009(d) states:

> On a showing that creditors or equity security holders will be prejudiced by conflicts of interest of a common trustee, the court shall order separate trustees for estates being jointly administered.

The court cannot fulfill the duty imposed by those Rules to consider potential conflicts before authorizing joint administration, or common trustees, committees and professionals, unless there is complete disclosure of all facts relevant to the issue. In these cases, as previously noted, the applications for joint administration stated only that the debtors' affairs were closely related, they had many of the same creditors, and the individual debtors had interests in entities involved in questionable transactions with BH & P. The applications failed to disclose that the BH & P

estate had claims against those of Herman and Berkow, or that those claims had been discussed with the United States Trustee. The vague reference to interests of the individual debtors in entities involved in questionable transactions with BH & P suggests there may be claims against the third party entities, but it does not in itself suggest the existence of claims by one estate against the other estate.

■ Just as a professional has a duty to disclose all facts relating to a possible conflict on an application for employment, so also an applicant for joint administration has a duty to disclose such facts in such application. Just as it is not the court's duty to search a file to determine for itself if a prospective professional has a conflict, *In re Glenn Electric Sales Corp.*, supra at 415, so also the court has no duty to search a file to look for possible conflicts in an application for joint administration. In both situations, it is the applicant's duty to bring all relevant facts to the court's attention. And in both situations, an applicant breaches that duty at his or her peril. The court has no doubt that if any party in interest were prejudiced by a breach of the duty to disclose facts relating to possible conflicts on an application for joint administration, the responsible individuals could be denied compensation and held personally liable to the extent of such prejudice.

In these cases, the orders entered on July 7, 1987 and December 14, 1987 authorizing joint administration were based upon applications which did not disclose all facts relating to possible conflicts. The court was therefore not given the opportunity to fulfill its obligation under Rule 1015(b), and the orders authorizing joint administration are therefore vacated. If one or both of the substitute trustees to be appointed in the Herman and Berkow cases determine from a fresh review that joint administration is desirable as to two or three of these cases, another application can be submitted.

## VII.

The question of conflicts arising from the presence of common trustees and profes-

sionals in related cases has been considered in several reported decisions. The trustee, his professionals and the United States Trustee rely heavily upon *In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932 (Bkrtcy.S.D.N.Y.1982).

In that case, O.P.M. Leasing Services, Inc. ("O.P.M.") was a wholly owned subsidiary of Cali Trading International, Ltd. ("Cali"). O.P.M. filed a petition for relief under Chapter 11, and James P. Hassett ("Hassett") was appointed trustee. In that capacity, Hassett filed an involuntary petition under chapter 11 against Cali, and an order for relief was entered. Hassett moved for appointment of a trustee for Cali, which was granted. The United States Trustee selected Hassett, and sent a report to the court which noted that there was a potential for conflict, but that because of other considerations, Hassett was the correct choice, and any actual conflict could be dealt with later if one developed. The court approved Hassett as Cali's trustee.

At the time, O.P.M. had claims against Cali for $134,153.98. It was also significant that after his appointment as trustee in both cases, Hassett filed suit on behalf of both estates to recover certain bank stock which Hassett believed was owned either by O.P.M. or Cali.

Albert Reisman, the chapter 7 trustee of one of Cali's two shareholders, who had also filed bankruptcy petitions, obtained an order requiring Hassett to show cause why he and his attorneys should not be removed from the Cali case because of conflicts. The key conflict alleged was that if Hassett succeeded in recovering the bank stock, it was unclear whether it belonged to O.P.M. or Cali.

The court held that in the Second Circuit, the fact that Hassett as O.P.M.'s trustee was a creditor of Cali did not create a conflict. The court also held that there was no conflict as to the bank stock unless Hassett succeeded in recovering it, in which case any conflict could be avoided with proper case management. The court believed that this approach "will prove least wasteful of time and money". Id. at

940. Accordingly, the court declined to remove Hassett and his attorneys from the Cali case.

This case differs from *O.P.M. Leasing* in that in that case, full disclosure of the conflict problem was made at the outset of appointment. However, the court declines to distinguish *O.P.M. Leasing* on that basis. For the reasons stated earlier, I disagree with the holding of *O.P.M. Leasing* that a claim by one estate against another does not present a conflict of interest for a trustee and his or her professionals. I also disagree with the holding of *O.P.M. Leasing* that recovery of an asset by the same trustee for two estates with claims to the asset creates no conflict, or creates one that can be vitiated by case management. As noted earlier, there are too many subtle ways in which the deck can be stacked against one of the estates in such situations, whether by inadvertence or design.

One aspect of the problem, and a possible solution, was stated in *In re Parkway Calabasas Ltd.*, 89 B.R. 832 (Bkrtcy.C.D.Cal. 1988). Pages 836 and 837 of that case have an excellent description of the differences between joint administration and substantive consolidation. On page 835 in footnote 3, the court presented the following analysis of the problem of conflicts of interest between related estates administered by the same persons, and of substantive consolidation as a solution:

3. One surprising feature of motions for substantive consolidation is the lack of opposition to such motions by unsecured creditors. This Court has entertained a number of such motions, and cannot recall a single instance where any opposition was voiced. No opposition was raised in this case. Perhaps the lack of opposition results from the fact that motions for substantive consolidation tend to be made after the cases have been pending for some time, and the unsecured creditors may have lost interest and given up hope for a substantial dividend.

It appears to the Court, however, that there are often more sinister explanations for the lack of opposition to a mo-

tion for substantive consolidation. While the unsecured creditors may have lost interest, the respective committees of unsecured creditors (if they are active) and their counsel should be actively involved in the process, and looking out for the interests of the disillusioned unsecured creditors. The respective trustees and their counsel should likewise be scrutinizing a substantive consolidation motion for fairness to the respective groups of unsecured creditors.

None of these parties typically raises any concern about the possible prejudicial effects of substantive consolidation. The reason is that there is typically (as in this case) a single trustee, a single attorney or law firm representing the trustee (or the debtor, if the cases are under Chapter 11 and the debtor is in possession), a single committee of unsecured creditors, and a single attorney or law firm representing the committee.

*Where there are no separate trustees, creditors committees or counsel, each has a hopelessly irresolvable conflict of interest on a motion for substantive consolidation. See 5 Collier on Bankruptcy § 1100.07 (15th ed. 1988), at 1100–50. Each is required to support the substantive consolidation for the benefit of the less solvent estate and its creditors, and to oppose it for the benefit of the more solvent estate and its creditors.*

Curiously, the professionals do not typically find that this irresolvable conflict immobilizes them on the substantive consolidation issue. In fact, they almost universally support a motion for substantive consolidation. It appears to the Court that this support often arises for the selfish purpose of assuring a fund for the payment of all of their fees, and to avoid the possibility that they will not be paid for the portion of their work performed for an administratively insolvent estate.

As a penalty for this incurable conflict, the Court has the power to reduce the compensation awarded to professionals, or to deny it altogether. However, this does not solve the problem of inadequate representation of parties with differing interests in the substantive consolidation motion. It is also not fair to the professionals to appoint them in circumstances where the diligent prosecution of their duties will embroil them in such conflicts and expose them to a loss of fees.

*It appears to the Court that the only reasonable point to obtain a mechanical advantage on this problem is at the outset of the case, when the trustee, the creditors' committees and counsel are appointed.*

*Accordingly, this Court adopts the presumption that it is improper to appoint (1) a single trustee, (2) a single creditors' committee, or (3) the same counsel for the trustees, for the creditors' committees or for the debtors-in-possession under the following circumstances:*

*(a) Where creditors of the debtors have dealt with such debtors as an economic unit (which may be reflected in guaranties and subordination agreements);*

*(b) Where the affairs of the respective debtors (as reflected in inter-debtor accounts, jointly owned assets, guarantees, subordination agreements, or shared officers, directors or owners) appear to be substantially entangled;*

*(c) where assets have been transferred from one debtor to another in transactions that are not at arms length;*

*(d) where piercing of the corporate veil of one of the debtors is necessary or advisable to protect the rights of creditors of another debtor.*

The foregoing procedures were not in place for these consolidated cases. Even if they were, these cases most likely would have required substantive consolidation, because of the uncertainty of ownership interests.

Professionals seeking appointment under section 327 are required to disclose any such factors in their applications for appointment. Any professional seeking to rebut the presumption may do so only after a hearing on notice to all creditors

in each of the related cases, in which the professional will have a heavy burden to carry in showing the inequity of requiring separate professionals. The notice must be adequate to inform the creditors that the appointment may result in conflicts of interest and a lack of adequate representation of the interests of the respective bodies of unsecured creditors. *In re Parkway Calabasas*, 89 B.R. at 835 n. 3 [emphasis added]

■■■ This court generally agrees with the analysis quoted above from *Parkway Calabasas*. This court hereby also adopts the same presumption as to the impropriety of appointing the same trustee, creditors committee, or counsel to them or to debtors in possession in the circumstances described in *Parkway Calabasas*. This court will add a fifth circumstance where it is presumptively improper to have common fiduciaries and professionals: where one estate has claims against the other, such as in these cases.

It must also be added that if it is presumptively improper to have the same trustee, creditors committee or counsel in those circumstances, it follows that it must also be presumptively improper to have the same management for two or more debtors in possession in those circumstances. It is axiomatic that a debtor in possession is a fiduciary. It makes little sense to require separate counsel for related debtors in possession if management is the same. In that situation, the only acceptable solution may be to appoint a trustee for one of the estates under § 1104(a).

Of course, presumptions are sometimes rebuttable. If there is an actual conflict of interest, the presumption of impropriety in the five circumstances set forth above could not be rebutted. If there is a potential conflict of interest, the presumption could be rebutted if either no other competent fiduciary or professional is available, or the possibility that the conflict will become actual is remote and circumstances make use of a common fiduciary and professionals particularly compelling.

The court in *Parkway Calabasas* concluded that in such circumstances, any professional seeking to rebut the presumption of impropriety could do so only after a hearing on notice to all creditors as to the possible effects of the conflict, and that there would be a heavy burden to carry in showing the inequity of requiring separate professionals. In this court's view, notice to creditors may be appropriate in some cases, but the determination should be made on a case by case basis. This court has serious reservations as to whether a creditor body could in effect waive the conflict by failing to object to such notice, in the same manner that two parties can waive an attorney's conflict by express agreement.

However, it should also be emphasized that where there appears to be cause for substantive consolidation, it should promptly be requested, and it should not be contested unless there is a good faith basis for contesting it. The mere fact that one estate is more solvent than the other is not in itself a sufficient basis for objecting to substantive consolidation; other facts must also create a bona fide argument against that relief. Once cases are substantively consolidated, only one fiduciary, attorney and accountant will ordinarily be needed.

### VIII.

This opinion has thus far focused on the issue of conflicts of interest in related cases, and has concluded that all actual conflicts and most potential conflicts are to be avoided by appointing separate fiduciaries and professionals in the circumstances previously described. The concerns expressed in *O.P.M. Leasing* regarding inefficiency and duplication of services have not yet been addressed herein. That is because in this court's view, to the extent that there is any tension between disinterestedness on one hand and efficiency and economy on the other, disinterestedness must prevail. Integrity is no less necessary because it may be inconvenient or expensive.

However, this court expects efficiency and economy, as well as integrity, in bankruptcy cases. Although there may inevitably be some duplication of services where

there are separate fiduciaries and professionals in related cases, that problem can be minimized by having only one fiduciary and professional perform services on behalf of both estates, or by an apportioning of responsibilities, to the extent that there is a unity of interest rather than a conflict of interest in certain areas. That is not unheard of in bankruptcy cases. For example, in chapter 11 cases where there is both a trustee and a creditors committee, a responsible attorney for a creditors committee will often take a much less active role than would be the case with a debtor in possession. Other measures to promote efficiency and avoid duplication are also possible. The only limits are the attention and imagination applied collectively to the problem by all concerned. With careful monitoring by the court and the United States Trustee, efficiency and economy do not have to be sacrificed in these situations. And where those problems do occur, the court always has the power to reduce fees accordingly.

## IX.

To summarize, the court holds the following in these cases:

1. The trustee, attorneys and accountants knowingly and intentionally withheld disclosure in the applications to retain the professionals in the Herman and Berkow cases of the fact that BH & P, and Maggio as its trustee, had claims against Herman and Berkow, that Maggio and Marks had discussed the question of conflicts with the United States Trustee, and that they all knew of the claims, in violation of Bankruptcy Code § 327(a) and Bankruptcy Rule 2014(a).

2. A trustee of an estate which holds a claim against another estate is a creditor of the latter estate under Code § 101(9). A trustee is not a disinterested person as to an estate of which he is a creditor by virtue of Code § 101(13)(A) and (E). Code § 701(a)(1) requires that a person appointed as a trustee must be disinterested. A conflict of interest is cause for removal of a trustee under Code § 324(a). Maggio is therefore removed as trustee of the Herman and Berkow cases. Although Code § 324(b) provides that a trustee removed for cause from one case shall generally be removed from all cases, the court declines to remove Maggio from all cases on the record before the court.

3. Where an attorney or accountant for a trustee also represents or is employed by a creditor, such professional has an actual or potential conflict of interest. An actual conflict of interest can be defined as an active competition between two interests in which one interest can only be served at the expense of the other. A potential conflict of interest can be defined as one in which the competition is presently dormant, but may become active if certain contingencies occur. The court shall disapprove employment by the trustee of a professional person if there is an actual conflict of interest under Code § 327(c). The court may disapprove employment of a professional with a potential conflict of interest, and should generally do so unless no other competent professional is available, or the possibility that the potential conflict will become actual is remote and the reasons for employing the professional in question are particularly compelling. Although Code § 327(c) provides that the court shall act on a question of conflicts if there is an objection by a creditor or the United States Trustee, the court is authorized by § 105(a) to raise objections *sua sponte*, and the court will do so where questions of conflict are noticed. In these cases, Ravin, Greenberg and Bederson have an actual conflict of interest, and they are therefore removed as attorney and accountant for the trustee in the Herman and Berkow cases, but not the BH & P case.

4. A trustee or a professional in a bankruptcy case who serves conflicting interests may be denied compensation. All facts relating to a question of actual or potential conflict must be disclosed in an application to employ a professional. Breach of the duty of disclosure may result in denial of compensation. A trustee may be denied compensation for intentional or negligent employment of a professional with a conflict of interest. Maggio, Ravin,

Greenberg and Bederson are denied compensation in the Herman and Berkow cases because Maggio is not a disinterested person as to those cases, and because he and the professionals withheld disclosure of that fact from the court. They will not be denied compensation in the BH & P case on the record presently before the court.

5. Bankruptcy Rules 1015(b) and 2009(d) require that on applications for joint administration or appointment of a common trustee, committee or professionals, the court must give consideration to protecting the creditors of both estates against potential conflicts of interest. The court cannot fulfill that duty unless all relevant facts are disclosed in an application for joint administration. Here, all such facts were not disclosed. The orders for joint administration are therefore vacated.

6. It is presumptively improper in related cases to (1) appoint a single trustee, (2) appoint a single creditors' committee, (3) appoint the same counsel for a trustee, creditors' committee or debtor in possession, or (4) permit the same management for two or more debtors in possession where:

(a) creditors of the debtors have dealt with the debtors as an economic unit;

(b) the affairs of the debtors are substantially entangled;

(c) assets have been transferred from one debtor to another in transactions that are not at arms length;

(d) piercing the corporate veil of one of the debtors may be necessary or advisable; or

(e) one estate has claims against the other.

The presumption of impropriety cannot be rebutted if there is an actual conflict of interest. It may be rebutted if there is a potential conflict of interest, and either no other competent fiduciary or professional is available, or the possibility that the conflict will become actual is remote and circumstances make use of a common fiduciary and professionals particularly compelling. If related cases are substantively consolidated, only one fiduciary, attorney and accountant will ordinarily be needed from that point.

6. Efficiency and economy do not necessarily have to be sacrificed to preserve integrity in related bankruptcy cases with separate fiduciaries and professionals. With careful monitoring by the courts and the United States Trustee, duplication of services can be minimized by such measures as apportioning of responsibilities in areas where the estates have a unity of interest rather than a conflict of interest.

### X.

The order entered on July 13, 1989 embodied all of the essential elements of the court's decision. However, as noted herein, the court has decided upon further reflection to modify that portion of the order which authorized the trustee, attorney and professionals in the BH & P case to refile fee applications ninety days after the appointment of substitute trustees and professionals in the Herman and Berkow cases. Fee applications in that case are not to be filed until further order of the court or until the case is being closed. The attorney for BNY shall submit an order effecting that modification.