**In re ADAM FURNITURE INDUSTRIES, INC., A Georgia Corporation.**

**In re Adam Furniture Industries, Inc., A New Jersey Corporation, Debtor-in-Possession.**

**Bankruptcy No. 92–60200.**

United States Bankruptcy Court, S.D. Georgia, Statesboro Division.

Aug. 17, 1993.

Jesse C. Stone, Merrill, Stone & Parks, Swainsboro, GA, for debtors-in-possession.

Louis Saul, Augusta, GA, for objecting creditors.

## MEMORANDUM AND ORDER ON OBJECTION TO APPOINTMENT OF ATTORNEY

JOHN S. DALIS, Bankruptcy Judge.

On March 17, 1993 the debtor in the above captioned case applied to the court to employ the law firm of Merrill, Stone and Parks ("the law firm") as its attorneys. By order of March 18, 1993 the court granted debtor's application. On March 24, creditors of the debtor, Lignacon Holzoberflachen, Anlagen und Lacktechnick Gmbh ("Lignacon") and Sidex International Furniture Corporation ("Sidex"),[1] filed objection to the order and sought to have the order vacated. Based on the evidence presented, I make the following findings of fact and conclusions of law sustaining the objection.

### FINDINGS OF FACT

The debtor, Adam Furniture Industries, Inc. ("Adam Furniture") was incorporated in 1983 in the state of New Jersey. The principal business of Adam Furniture was the importation and sale of wood veneer office furniture. The business was reincorporated as a Georgia corporation in early 1991 after moving its operations to Swainsboro, Georgia.[2]

The sole shareholder and principal officer of Adam Furniture, the Georgia corporation,[3] is Mr. Robert Bono. He first employed Mr. Charles Merrill of the law firm to form that entity. Since that time the law firm has represented Robert Bono and the debtor in all their legal matters. Part of those services rendered by the law firm include the incorporation of two other entities, Adam, Inc. and Furniture Marketing Systems, Inc. ("Furniture Marketing"). Both of these corporations were formed in early 1991 around the same time as the formation of Adam Furniture, the Georgia corporation.

All three entities occupy the same premises in Swainsboro, Georgia. According to Mr. Bono, Adam Furniture was designed to be a warehousing corporation. Furniture Marketing acted as debtor's sales agent and operated on a commission basis. Adam, Inc. controlled the personnel end of the operation.

The entities are also closely connected in terms of ownership and control. Robert Bono is the sole shareholder of the debtor Adam Furniture. Mr. Bono's wife is the sole shareholder of Adam, Inc. and Furniture Marketing. Mr. Bono is president of all three entities.[4] Finally, the Adam Furniture warehouse is owned by Robert Bono and the wife of Norman Kumer.

The case now before the court originally began on April 15, 1992 when Lignacon, the main supplier and purported largest creditor of Adam Furniture, brought an involuntary bankruptcy petition under chapter 7 against the debtor. Lignacon was subsequently joined in the petition by three additional creditors. The debtor con-

---

1. While the debtor disputes the claim of Lignacon, it is undisputed that Sidex is the holder of an allowed claim.

2. Involuntary petitions were brought against Adam Furniture Industries, Inc., a New Jersey corporation and Adam Furniture Industries, Inc., a Georgia corporation. The cases were consolidated on June 1, 1992.

3. It is the contention of the debtor that all the assets and liabilities of the New Jersey corporation were transferred in tact to the Georgia corporation and that the New Jersey corpora-

tion no longer exists. Unless noted, future references to the debtor or Adam Furniture will be to the Georgia corporation.

4. The evidence on record also reveals that Norman Kumer was an officer in Adam Furniture, both the New Jersey and Georgia corporations. Other documents filed with this court also indicate that Mr. Kumer is secretary of Adam Furniture, Furniture Marketing, and Adam, Inc. However, Mr. Kumer's exact role in and/or control of these entities is in dispute and unclear at this stage.

tested the petition,[5] but after a trial on the issue, I determined that the petition was valid and relief was granted under chapter 7 on January 21, 1993. On the same day, the debtor voluntarily converted the case to the present Chapter 11.

Prior to the involuntary petition being filed, the debtor owed the law firm $2,844.00 in attorney fees. Since the petition, the law firm has been paid $32,877.57 in fees for post-petition bankruptcy work for the debtor.[6] Adam, Inc., Furniture Marketing, and Robert Bono paid these post-petition fees. The source of post-petition fee payment was learned only after the law firm filed a Bankruptcy Rule 2016(b) statement at a hearing on the objection.[7]

The employment application and accompanying verification affidavit filed with the court state that the law firm has no relation to either creditors of the debtor or to any other party in interest. However, Furniture Marketing is listed in the schedules as having a claim against the debtor and was claimed as a creditor at the trial on the involuntary petition. Robert Bono has testified that he personally guaranteed the debt of Adam Furniture to Manufacturer's Hanover Bank. Additionally, objecting creditors allege that all three corporate entities have cross-guaranteed each of the others indebtedness to Manufacturer's Hanover Bank.[8]

## CONCLUSIONS OF LAW

■ The employment of attorneys or other professional persons by the trustee or debtor-in-possession is governed by 11

U.S.C. § 327. That section provides in pertinent part:

(a) Except as otherwise provided in this section, the trustee,[9] with the court's approval, may employ one or more attorneys ... *that do not hold or represent an interest adverse to the estate, and that are disinterested persons....* (emphasis added).

"Disinterested person" is statutorily defined in 11 U.S.C. § 101(14), in pertinent part, as a person that—

(A) is not a creditor ... or an insider; ... and

(E) does not have an interest materially adverse to the interest of the estate, or any class of creditors, or equity security holders, by reasons of any direct or indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason.

Section 327(a)'s "hold ... an interest adverse to the estate" is essentially synonymous with "have an interest materially adverse to the estate" in § 101(14)(E). *In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr.D.N.J.1988). In addition, § 327(a) provides that the person to be employed cannot "represent" an interest adverse to the estate, an additional requirement not found in § 101(14)(E). *In re BH & P, Inc.,* 103 B.R. 556, 562 (Bankr.D.N.J.1989), *aff'd in part, rev'd in part,* 119 B.R. 35 (D.N.J. 1990), *aff'd,* 949 F.2d 1300 (3d Cir.1991).

■ In opposing this appointment, the objecting creditors contend that the law firm should be disqualified from representing the estate because it is owed $2,844.00 in accrued pre-petition fees by the debtor. It is clear from 11 U.S.C. § 1107(b)[10] that

---

**5.** 11 U.S.C. § 303 sets out the requirements for the commencement of an involuntary case under chapter 7.

**6.** Of that sum, $21,088.57 was received prior to the case's conversion to chapter 11. Since conversion, $11,789.00 has been paid.

**7.** There is no specific breakdown of exactly which entity paid how much to the law firm. The 2016(b) statement reveals only that the fee payments came from all three sources.

**8.** These allegations are supported by documents filed by objecting creditors in support of a Mo-

tion to Amend Judgment in the trial of the involuntary petition.

**9.** 11 U.S.C. § 1107 grants to the debtor-in-possession, subject to certain enumerated limitations, all the rights and powers of a trustee.

**10.** 11 U.S.C. § 1107(b) provides

Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title [11] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

the law firm is not disqualified from employment simply because of its pre-petition representation of the debtor. However, because the law firm is owed pre-petition fees, it is a "creditor" of the debtor under the Bankruptcy Code.[11] Since 11 U.S.C. § 101(14)(A) provides that a creditor of the debtor is not a "disinterested person," the law firm is apparently disqualified from employment under § 327.

██ The law firm contends, however, that it falls within a judicially created exception to the statutory rule that a creditor of the debtor is not "disinterested." Courts have not always disqualified attorneys who were creditors of the debtor's estate. *In re Martin*, 817 F.2d 175 (1st Cir.1987); *In re K & R Mining, Inc.*, 105 B.R. 394 (Bankr.N.D.Ohio 1989). The rationale given is that

> [s]uch literalistic reading defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on account.

*In re Martin*, 817 F.2d at 180. However, this exception is limited to cases where pre-petition liens have been taken solely for future bankruptcy services and/or where the legal fees that accrued pre-petition have been incurred solely for services rendered in contemplation of and in connection with the bankruptcy case. *See In re Roberts*, 46 B.R. 815, 849 (Bankr.D.Utah 1985), *aff'd in part, rev'd in part*, 75 B.R. 402 (D.Utah 1987). According to the testimony of Robert Bono, while the fees owed the law firm were for some pre-bankruptcy work, they also included work involved in incorporating the three related corporate entities in this case. Thus, the law firm does not fall within this limited exception.

██ The law firm also contends it is not a creditor of the debtor because it never included the $2,844.00 claim in the creditor count in the involuntary petition trial and that it has waived this fee. The elimination

of an attorney's "creditor" status by the waiving of pre-petition attorney fees has been approved as a way of resolving this dilemma. *See In re Pica Systems, Inc.*, 124 B.R. 30, 33 (E.D.Mich.1991); *In re Roberts*, 46 B.R. 815, 849 (Bankr.D.Utah 1985), *aff'd in part, rev'd in part*, 75 B.R. 402 (D.Utah 1987). In this case, the law firm's fee waiver is valid; and therefore, it is not disqualified from employment on the ground that it is a creditor of the debtor.

██ Objecting creditors also contend that the law firm's employment should be disapproved because it is an insider of the debtor. An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 n. 11; S.Rep. No. 989, 95th Cong., 2d Sess. 25 n. 11, U.S.Code Cong. & Admin.News pp. 5787, 5810, 5811, 6269. Section 101(31) of the Bankruptcy Code specifically defines insider to include—

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31).

As lawyers employed by the debtor, the law firm does not fall within any of these categories. However, this list is not exhaustive. The law firm still can be considered an insider if its relationship with the debtor is so close that it requires scrutiny closer than those dealing at arms length with the debtor. According to the objectors, this scrutiny is mandated because the law firm incorporated all three interrelated corporate entities and is being paid to represent all of these entities, thereby giving

---

**11.** 11 U.S.C. § 101(10)(A) defines creditor to mean an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

rise to a conflict of interest. This argument is misplaced as to an insider objection. The true focus of an insider query is the nature of the relationship between the alleged insider (the law firm) and the debtor and whether their dealings cannot be characterized as "arms length transactions." *See In re Montanino*, 15 B.R. 307, 310 (Bankr.D.N.J.1981). This objection raises the issue of the law firm's loyalty to the debtor, not its influence over the debtor.

■ An attorney-client relationship does not, without more, make the attorney an "insider." *In re Durkay*, 9 B.R. 58, 61 (Bankr.N.D.Ohio 1981). Attorneys should be considered insiders only in those situations where an attorney has or can assume a high likelihood of control over the debtor. *Id.; see In re Carousel Candy Co.*, 38 B.R. 927 (Bankr.E.D.N.Y.1984) (attorney in defacto control of debtor prior to filing); *In re Michigan General Corp.*, 77 B.R. 97 (Bankr.N.D.Tex.1987) (attorney on board of directors of debtor affiliate and evidence of preferential payments to attorney). As there is no evidence of control over the debtor by the law firm beyond a normal attorney-client relationship, the law firm is not disqualified from employment under § 327 on the ground that it is an "insider" of the debtor.

■ The most problematic contentions of the creditors concern the relationships between the law firm, the debtor, Robert Bono, and the other corporate entities, Adam, Inc. and Furniture Marketing. Unfortunately, the nature of these relationships was not timely revealed as required by the Bankruptcy Code and Rules.

Bankruptcy Rule 2014 governs the filing of an application for employment of professional persons, including attorneys. It requires that both the petitioner seeking leave to employ and the person to be employed disclose to the court all the person's connection with the debtor, creditors, or any other party in interest.[12]

Section 329 of the Bankruptcy Code also mandates disclosure of certain facts relating to a debtor's transactions with its attorney. It provides in pertinent part:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court *a statement of the compensation paid* or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, *and the source of such compensation.* (emphasis added).

11 U.S.C. § 329. In conjunction with § 329, Bankruptcy Rule 2016(b) requires that this statement be filed with the United States trustee *within 15 days after the order for relief.*

Neither of the disclosure requirements set out above have been fully complied with by the debtor or the law firm. Pursuant to Bankruptcy Rule 2014, the debtor filed an employment application with accompanying verification affidavit on March 17, 1993. These documents provide that the law firm had no relation to either creditors of the debtor or any other party in interest. However, at a hearing on credi-

---

12. Bankruptcy Rule 2014 states:
 An order approving the employment of attorneys ... or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or the committee.... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connection with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

tors' objection to employment of the law firm held April 13, 1993, the court and creditors first learned that payment for the law firm's post-petition services to the debtor had been made by Adam, Inc., Furniture Marketing, and Robert Bono. This disclosure was made by the debtor's late filing of the required Bankruptcy Rule 2016(b) statement.[13]

The debtor and the law firm's failure to reveal in the employment application and affidavit that the law firm was being paid by Adam, Inc., Furniture Marketing, and Robert Bono directly violates Bankruptcy Rule 2014's requirement that all the law firm's connections to creditors of the debtor or other parties in interest be disclosed. Both in the trial on the involuntary petition and in the chapter 11 schedules, Furniture Marketing was claimed as a creditor of the debtor. Moreover, Robert Bono personally guaranteed the debt of Adam Furniture to Manufacturer's Hanover Bank. As a guarantor, he would hold at least a contingent claim against the debtor, thereby making him its creditor.[14] As such, the law firm's receipt of fee payments from Furniture Marketing and Robert Bono should have been timely revealed to the court. *See* Bankruptcy Rules 2014, 2016; 11 U.S.C. § 329.

 Furthermore, even assuming that Adam, Inc. is not a creditor of the debtor, because of the close ownership and business interests between it and the debtor, Adam, Inc. would still be considered a "party in interest" under Bankruptcy Rule 2014. Although "party in interest" is not defined under the Bankruptcy Code, it is construed broadly in order to effectuate the purpose of disclosure—"to permit the court to determine whether the attorney is disqualified or whether further inquiry is needed before making that determination." *In re Rusty Jones, Inc.*, 134 B.R. 321, 345 (Bankr.N.D.Ill.1991). The burden of disclosure is on the attorney; it is not the court's

duty to conduct independent fact-finding investigations. *In re Tinley Plaza Associates, L.P.*, 142 B.R. 272, 278 (Bankr.N.D.Ill. 1992). Even that which on the surface may appear to be trivial connections should be disclosed in order for the integrity of the bankruptcy system to be maintained. *In re EWC, Inc.*, 138 B.R. 276, 280–81 (Bankr. W.D.Okl.1992).

 Failure to fully disclose the relationships as required by law can warrant disqualification, denial of compensation, and disgorgement of any compensation already received. *See In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr.W.D.Okl.1992). Whether the law firm's failure to disclose was due to oversight or negligence, failure to understand the importance of proper disclosure, or intent to circumvent the requirement is not decided. *See In re Atlanta Sporting Club*, 137 B.R. 550, 553 (Bankr.N.D.Ga.1991). Moreover, although I do not decide whether the law firm's failure to timely and properly disclose the source of its payment to date warrants the law firm's disqualification standing alone, it is an important factor in my final determination that disqualification is appropriate.

 The main contention of the creditors is that the conflicting relations between the debtor, the law firm, Adam, Inc., Furniture Marketing, and Robert Bono disqualify the law firm from employment. Since the filing of the involuntary petition, it has been the contention of the principal creditor Lignacon that Adam, Inc. and Furniture Marketing were formed for the purpose of taking over the business of the debtor, draining its assets, including client good will, and leaving it an insolvent shell. In support of this contention, Lignacon contends that all three corporate entities are controlled by the same persons, Robert Bono and Norman Kumer. Lignacon also alleges that the transfer of assets from the

---

**13.** The Rule 2016(b) statement should have been filed by February 6, 1993. Over two months later and after creditors had objected to the law firm's appointment, the statement was filed.

**14.** It is also alleged, with some supporting evidence, that all three corporate entities have cross-guaranteed each others debts to Manufacturer's Hanover Bank. If these allegations are correct, Adam, Inc. would also be considered a creditor of the debtor by virtue of its guarantee.

debtor to the other corporate entities is evidenced by Adam, Inc. and Furniture Marketing's use of the same telephone number, the same computer lists, and the same officers and employees in carrying on the same business as the debtor from the same location. Objecting creditors contend that these exchanges constitute either preferential transfers or fraudulent conveyances to Adam, Inc. and Furniture Marketing and that those entities should be set aside and their assets recovered by the bankruptcy estate. *See* 11 U.S.C. §§ 547, 548, 550.

Because the law firm is receiving its fees from the very entities against whom avoidance and recovery actions may have to be taken, a real possibility exists for a conflict of interest for the law firm. They may be called upon to sue the very people and entities that pay them. This conflict disqualifies the law firm under section 327(c) and/or under sections 327(a) and 101(14)(E).

■■■ Section 327(c) of the Bankruptcy Code provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified from employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). This section recognizes that an attorney is not per se disqualified from employment because of a prior or current representation of a creditor of the debtor. However, the court must disapprove that attorney's employment if such a current or prior representation or employment exists, a creditor objects, *and* an actual conflict of interest is found by the court.

Initially, § 327(c) appears applicable to the facts of this case. The law firm received payment of its fees, earned by doing post-petition work for the debtor, from Furniture Marketing, Adam, Inc., and Robert Bono. This payment constitutes the law firm's representation of or employment by those entities paying such fees. *See In re Glenn Electric Sales Corp.*, 89 B.R. 410, 416 (Bankr.D.N.J.), *aff'd,* 99 B.R. 596 (D.N.J.1988).[15] Moreover, both Furniture Marketing and Robert Bono are creditors of the debtor. Accordingly, as creditors Lignacon and Sidex have objected to the law firm's employment by the debtor, I must disqualify the law firm if I find that this representation of or employment by Furniture Marketing or Robert Bono constitutes an actual conflict of interest.

■■■ In the context of legal representation, a "conflict of interests" refers to "the representation by a given attorney or law firm of two or more entities holding or claiming adverse interests." *In re Roberts*, 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd,* 75 B.R. 402 (D.Utah 1987). In this case, the law firm's employment by or representation of Furniture Marketing constitutes a conflict of interest with the debtor based upon the objecting creditors allegations of fraudulent conveyances and preferential transfers. In any fraudulent conveyance or preferential transfer dispute, the opposing parties have adverse interests because each is asserting that it has the proper right to certain assets. *See id.* at 826–27. In this case, where a fraudulent scheme to leave the debtor insolvent has been alleged, the dispute would be over the right of the debtor to recover its assets from Furniture Marketing and Adam, Inc.[16] The law firm was not ignorant of these allegations or of the facts alleged to support them, and although no preference or fraudulent conveyance action has yet been taken, the potential for such actions and the requirement that the debtor's counsel

---

**15.** I do not decide whether these fee payments constitute past or current representation or employment because that determination is not required for the § 327(c) analysis.

**16.** The court notes that the debtor's possible right to recover assets from Adam, Inc. is not relevant to its § 327(c) analysis because Adam, Inc.'s status as a creditor of the debtor has not been fully established.

evaluate such claims is already present. Characterizing this as merely a potential conflict of interest rather than actual does not resolve the law firm's dilemma.

■■■ An actual conflict is said to exist when there is "an active competition between two competing interests, in which one interest can only be served at the expense of the other." *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr.D.N.J.1989), *aff'd in part, rev'd in part*, 119 B.R. 35 (D.N.J. 1990), *aff'd*, 949 F.2d 1300 (3d Cir.1991). A potential conflict is said to be "one in which the competition is presently dormant, but may become active if certain contingencies occur." *Id.* This distinction between "potential" and "actual" conflicts of interest is not a valid measure for resolving a conflict of interest challenge to an attorney's retention in a bankruptcy context. If there is even a possible future conflicting interest present that could prevent the counsel from fulfilling his duties, that conflict is "actual". *See In re Kendavis Industries International, Inc.*, 91 B.R. 742, 754 (Bankr.N.D.Tex.1988); *In re Amdura Corp.*, 121 B.R. 862, 868 (Bankr.D.Colo. 1990); *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr.N.D.Ill.1990), *aff'd sub nom., Grabill Corp. v. Pelliccioni*, 135 B.R. 835 (N.D.Ill.1991), *aff'd*, 983 F.2d 773 (7th Cir. 1993). Once counsel represents clients with conflicting interests, counsel may compromise representation of one client by failing to aggressively investigate or prosecute claims against the other client. *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr.N.D.Ill.1992).

■■■ By adopting this analysis I do not reject the possibility that some conflicts of interest may be only so remote as to be merely potential and thus not disqualifying. The determination is fact specific to each case. In this case, there is an actual conflict of interest. Even though the law firm acts as attorney for the debtor-in-possession, it also has certain fiduciary duties to the estate, including insuring that the rights of the creditors are protected. *In re Sky Valley, Inc.*, 135 B.R. 925, 939 (Bankr. N.D.Ga.1992). This protection extends to a good faith impartial analysis by counsel for the debtor-in-possession of whether to devote assets of the estate to the pursuit of potential preferential transfers or fraudulent conveyances for the ultimate benefit of estate creditors. Based on the evidence and allegations now before the law firm concerning the possible fraudulent conveyances or preferential transfers of the assets of the debtor to Furniture Marketing and Adam, Inc., the law firm is faced with the question of whether to investigate and pursue Furniture Marketing and Adam, Inc. in an attempt to recover assets for the estate. This question makes present (actual) the risk that the law firm may compromise its representation of the debtor in order to protect its source of fees. This risk is compounded by the law firm's admission that the estate has limited funds to pay the lawyers. Accordingly, having determined that an actual conflict of interest exists, I find the law firm to be disqualified as counsel for the debtor under § 327(c) of the Bankruptcy Code.

■■■ In addition, the law firm is disqualified from employment because it "holds an interest adverse to the estate" under sections 327(a) and 101(14)(E). A law firm is deemed to hold an interest adverse to the estate when it "possess[es] a predisposition under circumstances that render such a bias against the estate." *In re Roberts*, 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd*, 75 B.R. 402 (D.Utah 1987). The standard placed on a law firm under these sections is strict:

> As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might in the view of the trustee or the bankruptcy court affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case.

*Roger J. Au & Son, Inc. v. Aetna Insurance Co.*, 64 B.R. 600, 604 (N.D.Ohio 1986) (citing 2 *Collier on Bankruptcy* ¶ 327.-03[3][a], at 327–13 (L. King ed. 1985)).

The payment of fees by Adam, Inc., Furniture Marketing, and Robert Bono renders

the law firm predisposed to act in their paying clients' favor. The question presented is whether this predisposition exists "under circumstances that render such a bias against the estate." It does. The possible need for the law firm to act against Adam, Inc., Furniture Marketing, and Robert Bono in a preferential transfer avoidance or fraudulent conveyance recovery action is a circumstance that renders this predisposition a bias. In addition, the law firm's failure to disclose its fee relation with Adam, Inc., Furniture Marketing, and Robert Bono until after creditors objected to its employment only reinforces concerns that the law firm would not aggressively investigate or pursue actions against those entities. Therefore, I find the law firm "holds an interest adverse to the estate" under § 327(a) and § 101(14)(E) which disqualifies it from employment as debtor's attorney.

In summary, the employment of the law firm as attorney for the debtor-in-possession is disapproved because:

a) the law firm and the debtor failed in their duty of disclosure as mandated under Bankruptcy Rule 2014 by not revealing in either the employment application or accompanying affidavit that the law firm was receiving payment from Adam, Inc., Furniture Marketing, and Robert Bono for fees incurred on behalf of the debtor;

b) payment of the law firm's fees by Furniture Marketing constitutes an impermissible conflict of interest where Furniture Marketing is a creditor of the debtor and where the law firm is required to investigate and may have to undertake avoidance and recovery actions against it; and

c) the law firm holds an interest adverse to the estate because the payment of its fees by Furniture Marketing, Adam, Inc., and Robert Bono renders the law firm biased against the estate where avoidance and recovery actions against those entities will have to be investigated and may have to be undertaken and where the relationship between the law firm and those persons was not timely revealed.

It is therefore ORDERED that the objection of Lignacon and Sidex to the employment of Merrill, Stone and Parks as attorneys for the Debtor is sustained; and it is further

ORDERED that this court's order of March 18, 1993 approving the debtor's application for employment of the law firm of Merrill, Stone, and Parks as attorneys for the Debtor is vacated.