**ICM NOTES, LTD., Plaintiff,**

v.

**ANDREWS & KURTH,
L.L.P., Defendant.**

**No. Civ.A. H–01–0299.**

United States District Court,
S.D. Texas,
Houston Division.

April 19, 2002.

---

William T. Green, III, Attorney at Law, Houston, TX, for plaintiff.

Paul J. Franzetti, Murray J. Fogler, McDade Fogler Maines, Houston, TX, for defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment (Instrument # 34) filed by Defendant Andrews & Kurth, L.L.P. Having considered the motion, submissions on file, and applicable law, the Court determines that the motion should be granted in part and denied in part.

## I. BACKGROUND

ICM, Inc. was the Chapter 11 debtor in a bankruptcy case filed in the Southern District of Texas, Houston Division, on October 9, 1997. Andrews & Kurth, L.L.P. ("A & K") represented ICM, Inc. in the bankruptcy case. NationsBank held a first lien position on virtually all of ICM Inc.'s assets and proceeds. Early in the bankruptcy case, NationsBank agreed to a Cash Collateral Order and Payment Proce-dures Order. The Cash Collateral Order continued a lockbox procedure for ICM, Inc. under which the cash proceeds of ICM, Inc.'s sales were collected by NationsBank as the lender and used to pay principal and interest. NationsBank would then release a corresponding amount of funds for payments to ICM, Inc.'s trade creditors and payroll. The Cash Collateral Order and Payment Procedures Order also provided for ongoing payment of fees and expenses to all professionals whose employment had been approved by the Bankruptcy Court ("Approved Professionals"). Under the Cash Collateral Order, NationsBank agreed to allow payments to Approved Professionals to be made out of ICM, Inc.'s cash collateral on an ongoing basis in an aggregate amount up to $200,000.[1]

During the bankruptcy case, Mason Pearsall and Randall J. Mayer formed ICM Notes, Ltd. ("ICM Notes") which purchased ICM Inc.'s outstanding notes to NationsBank and succeeded to Nations-Bank's position as ICM, Inc.'s secured lender. The Bankruptcy Court confirmed the Second Amended Plan of Reorganization as Modified ("the Plan") on September 29, 1998.[2] Section 6.1.2 of the Plan provided for the sale of certain assets of ICM, Inc. for $530,000 to "NewCorp," an unnamed investment partnership to be formed and controlled by Mason Pearsall and Randall J. Mayer.[3] Under the Plan, if

---

1. A & K states that ICM, Inc. made only one payment to professionals throughout the case as provided in the Cash Collateral Order.

2. A & K asserts that ICM Notes' attorney, Peter Johnson, primarily drafted the Plan.

3. Pearsall and Mayer are also the principals of ICM Notes. The bankruptcy court recognized the distinction between ICM Inc.'s secured lender, ICM Notes, and the proposed purchaser of ICM Inc.'s assets (the entity referred to as NewCorp):

> The issue of the exercise of its foreclosure rights by ICM Notes, Inc. is separate from the issue of whether NewCorp or its principals, Mayer and Pearsall, are obligated under the Plan, as modified, to consummate the purchase transaction set forth in the Plan.

Yet in one instance, the bankruptcy court referred to ICM Notes interchangeably with NewCorp ("The offer of ICM Notes, Ltd. was contingent on an ongoing business and a limited amount of accrued expenses."). It ap-

the transaction with NewCorp had been consummated, NewCorp would have assumed the notes owned by ICM Notes. The Plan further provided that a total of $220,000 would be paid from the $530,000 toward professional fees that the bankruptcy court ultimately allowed as administrative expenses.[4] None of the professionals made any agreement with either ICM, Inc. or ICM Notes to limit the fees and expenses to some proportion of $220,000.[5]

The closing of the purchase by "NewCorp" was originally set for 30 days after the entry of the confirmation order. By agreement of the parties, the closing date was extended on several occasions. The last date on which the parties agreed that the closing could take place was January 8, 1999.

By mid-December 1998, however, the outstanding professional fees exceeded $220,000. By letter dated December 15, 1998, A & K attorney John Sparacino notified Peter Johnson, counsel for ICM Notes and the purchaser (i.e., NewCorp), that the fees exceeded $220,000.[6] On December 16, 1998, Sheinfeld, Maley & Kay (SM & K) demanded payment of outstanding fees in accordance with the Cash Collateral Order.[7]

By letter dated December 30, 1998, John Sparacino notified Peter Johnson that "the transaction will not close prior to payment in full, or provision for such full payment, of allowed administration claims." Mr. Johnson responded by letters dated January 5, 1999 and January 6, 1999 that NewCorp elected to terminate its purchase offer.[8] In conjunction with the termination of

pears the bankruptcy court meant NewCorp here instead of ICM Notes.

4. The Approved Professionals, whose fees during the Bankruptcy case were administrative expenses, included PricewaterhouseCoopers (consulting and marketing services), Sheinfeld, Maley & Kay (attorneys for unsecured creditors' committee), Simonton, Kutac & Barnidge (tax advisors), and A & K (attorneys for ICM, Inc.).

5. A & K asserts that the proposed plan was feasible for the payment of administrative fees only if ICM, Inc. made payments to professionals under the Cash Collateral Order before closing the transaction under the Plan.

6. The December 15, 1998 letter lists a total of $318,391.14 owed for administrative claims, including $208,214.38 owed to A & K.

7. The parties dispute the facts surrounding the potential payment of this demand. A & K, citing the deposition of Robert Edens, argues that ICM, Inc. had sufficient cash in late December 1998 to pay the fees demanded by SM & K, but the principals of ICM Notes prevented ICM, Inc. from making the payment. The Court does not find a reading of Mr. Edens testimony to be this clear. Mayer, general partner of ICM Notes, states as follows in his declaration:

Pursuant to the Cash Collateral Order [] and the credit agreements, ICM, Inc. had the right to borrow funds from ICM Notes based on a borrowing base calculation. Once the amount to be advanced was calculated and determined, ICM Notes never told anyone at ICM, Inc. what use could be made of those funds. More specifically, ICM Notes never told anyone at ICM, Inc. that it could not use those funds to pay Sheinfeld, Maley & Kay, Andrews & Kurth, L.L.P. or any other law firm or accounting firm.

8. The January 5, 1998 letter included the following explanation:

During [an] examination [of the financial records of the Debtor,] it was discovered that significant administrative claims exist that cannot be paid by the resources available to the Debtor. In view of your advice that the transaction will not close until all such administrative claims are paid, it is apparent that the Debtor is unable to Close the sale contemplated by the Plan and as represented to the Purchaser. As a result of the foregoing, you are hereby notified that the Purchaser hereby terminates negotiation for purchase of the assets under the Plan and will not Close the transaction.

the purchase transaction, the principals of ICM Notes gave notice of the termination of the use of cash collateral and demanded turnover of ICM, Inc.'s assets that constituted other collateral under the notes.

Thereafter, ICM, Inc. filed a complaint in the bankruptcy court for injunctive relief to enjoin ICM Notes from foreclosing on assets of ICM, Inc. ICM, Inc. separately filed a Motion to Enforce the Terms of the Plan and for Closing of the Purchase. The bankruptcy judge allowed the rescission and termination of the purchase transaction, concluding the purchasers could withdraw their purchase offer because: (1) administrative and priority expenses (other than professional fees) exceeded the $160,000 allowed by the Plan and triggered the termination option in § 6.1.11 of the Plan;[9] and (2) the Debtor's demand for funds in excess of the purchase price in the December 30, 1998 letter (for professional fees) was an anticipatory breach of the Plan.[10] The court stated:

> Additionally, the court finds that Debtor demanded additional monies to be paid for the purchase of Debtor's assets, in the form of professional fees. The court finds that the cumulative actions of the Debtor breached the Plan provisions, and that the Purchaser was within its rights to withdraw the offer to purchase.

Further, the bankruptcy court allowed ICM, Notes, Inc. to exercise its foreclosure rights:

> Although the principals of ICM Notes, Inc. and the unformed entity of New-Corp are the same, ICM Notes, Ltd. nevertheless purchased NationsBank's rights against the Debtor and is entitled to enforce those rights. Nothing in the Plan, as modified, changes the rights and remedies available to ICM Notes, Inc., as the assignee of NationsBank's claim. This Court finds that ICM Notes, Inc. is entitled to foreclose on the personalty and real property of the Debtor pursuant to its rights under the loan documents.

ICM Notes completed the foreclosure of its security interests in ICM, Inc.'s assets. ICM Notes was the successful bidder at the foreclosure sale and acquired the assets.[11]

ICM Notes thereafter filed suit asserting claims for breach of fiduciary duty and tortious interference. A & K previously moved to dismiss all claims.[12] A & K now moves for summary judgment on the following grounds: (1) ICM Notes is barred from recovering on any claim in this case under the election of remedies doctrine because it successfully rescinded the pur-

---

**9.** The principals of ICM Notes believed the administrative and priority expenses to be more than $280,000.

**10.** The bankruptcy court's memorandum opinion stated: [The Plan, as modified,] provided that the Debtor could use funds separate from the distribution funds [i.e. the $530,000 purchase price] to pay the administrative expenses of professionals in excess of $220,000. *"However, the possible source of those separate funds is not clear.... It is unlikely that the funds to pay any professional fees in excess of the $220,000 could have come from the use of cash collateral."* (emphasis added).

**11.** Mayer states in his affidavit that after selling the assets to an unrelated third party, ICM Notes filed suit against ICM, Inc. and recovered a judgment for $1,703,633.46 plus accrued interest and attorney's fees.

**12.** The Court denied Defendant's previous Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment. Several of the grounds for relief in the previous motion overlap with the grounds in the instant motion. The Court notes, however, that additional factual development and briefing has occurred since the earlier motion, thus providing the Court with a more complete picture of the claims asserted herein.

chase offer and terminated the purchase transaction under the Plan, (2) A & K, as ICM, Inc.'s counsel, did not owe a fiduciary duty to ICM Notes, (3) ICM Notes lacks privity and standing to assert the breach of fiduciary duty claim in this case; and (4) A & K's conduct in sending the December 30, 1998 letter to counsel for ICM Notes did not breach any duty that might have been owed by A & K to ICM Notes.

## II. LAW AND ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990).

Initially, the movant bears the burden of pointing out to the court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–7, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted).

### A. Fiduciary Duty

After ICM Notes purchased the outstanding notes held by NationsBank, it held the primary lien position on ICM, Inc.'s assets and proceeds. When the principals of the yet-to-be-formed purchaser (NewCorp) terminated the purchase transaction, ICM Notes foreclosed on its security interests in ICM, Inc.'s assets. In the instant suit, ICM Notes takes the position that the December 30, 1998 letter (demanding the payment of all administrative claims at closing, including A & K's attorney's fees) was a breach of the fiduciary duty owed by A & K to ICM Notes and that this breach caused the transaction to fail. A pivotal issue is whether A & K, as counsel for the debtor-in-possession, owed a fiduciary duty to ICM Notes, the secured lender to ICM, Inc.

In its petition, ICM Notes asserts that A & K owed "the highest fiduciary duty to the estate and thus creditors of ICM, including ICM Notes." A & K argues that the bankruptcy court approved it as ICM, Inc.'s attorneys, not as counsel for the estate or for any individual creditor. A & K primarily presents two arguments to the Court to negate the existence of a fiduciary duty: (1) A & K could not and did not owe any fiduciary duty to ICM Notes as a matter of law, and (2) there is no factual basis for a finding of fiduciary duty in the context of this case because expert testimony is required to establish the background facts and basis for imposing a fiduciary duty outside of the traditional fiduciary relationships (i.e., other than principal-agent, attorney-client, trustee-beneficiary, etc.), and ICM Notes has failed to supply such expert testimony.

The guiding law defining the relationships among the various entities in a bankruptcy suit, including the fiduciary duties of counsel for a Chapter 11 debtor-in-possession, arises primarily from determinations of fee applications and compensation for counsel of the debtor-in-possession.[13] *E.g., Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434 (D.Utah 1998) (considering on appeal the bankruptcy court's denial of counsel's fee applications); *Damon & Morey LLP v. Slater,* 1998 WL 15959 (W.D.N.Y. Jan.14, 1998). After consideration of the relevant law, scholarly writings, and argument of the parties, the Court concludes that whereas an attorney for a debtor-in-possession may owe a general fiduciary duty to preserve the bankruptcy estate, this duty cannot be extended to justify the imposition of a fiduciary duty running from counsel for the debtor-in-possession directly to a particular creditor that would support a separate civil action for breach under the circumstances of the instant case. *See Scheftner v. Foster (In re Dieringer),* 132 B.R. 34 (Bankr. N.D.Cal.1991) (concluding that the attorney for the debtor-in-possession generally owes no fiduciary duties directly to creditors).

It is undisputed that counsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court. *E.g., Brown v. Gerdes,* 321 U.S. 178, 182, 64 S.Ct. 487, 88 L.Ed. 659 (1944) (finding that counsel for the debtor is an officer of the court and is bound by fiduciary standards). In addition, some courts have determined that counsel for a debtor-in-possession owes fiduciary duties to the bankruptcy estate as a whole. *See, e.g., In re JLM, Inc.,* 210 B.R. 19, 25 (2nd Cir. BAP 1997) ("Both management and its counsel have fiduciary duties to an estate in bankruptcy."); *In re Perez,* 30 F.3d 1209, 1218–19 (9th Cir. BAP 1994) (referring to counsel for the debtor as counsel for the estate and stating that "[c]ounsel for the estate must keep firmly in mind that his client is the estate and not the debtor individually"); *In re Adam Furniture Indus., Inc.,* 158 B.R. 291, 301 (Bankr.S.D.Ga.1993) ("Even though the law firm acts as attorney for the debtor in possession, it also has certain fiduciary duties to the estate, including insuring that the rights of the creditors are protected"); *In re Sky Valley, Inc.,* 135 B.R. 925, 929 (Bankr.N.D.Ga.1992) ("Debtor's attorney's duty as fiduciary of the estate requires an active concern for the interests of the estate and its beneficiaries."); *In re United Utensils Corp.,* 141 B.R. 306, 309 (Bankr. W.D.Pa.1992) ("An attorney for the debtor has a fiduciary duty not only to the debtor, but has a fiduciary obligation to act in the best interest of the entire estate, including creditors.").[14] The bankruptcy estate is defined generally in the Bankruptcy Code as "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.

---

**13.** Professionals employed by the trustee or debtor-in-possession may not "hold or represent an interest adverse to the estate" and must be "disinterested" persons. 11 U.S.C. §§ 327, 1107. The court may deny compensation for services and reimbursement for expenses if a professional is not disinterested or represents or holds an interest adverse to the interest of the estate with respect to the matter on which the professional is employed. *Id.* § 328.

**14.** "The [] view of counsel for debtor-in-possession as a fiduciary to the estate reflects a fairly recent development in bankruptcy law which is curiously undefined. From a review of the cases, it appears this conclusion is reached either by finding that the client is the estate and not the debtor-in-possession, [] or that counsel is a fiduciary to the estate because the client debtor-in-possession (or trustee) is a fiduciary to the estate." *Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434, 448 (D.Utah 1998).

Federal courts have imposed various duties upon counsel for the debtor-in-possession in relation to counsel's fiduciary obligations to the estate, including:

●A duty to "carefully monitor each case and encourage conversion or dismissal without delay when it becomes apparent that reorganization is no longer feasible or that wrongdoing is taking place," [15]

●A duty to inform the bankruptcy court of a debtor-in-possession's violation of its fiduciary duties to the estate and its creditors,[16]

●A duty to disclose the debtor's diversion of debtor-in-possession funds,[17]

●A duty to maximize the estate,[18] and

●A duty to exercise independent professional judgment on behalf of the estate and to disclose any actual or potential conflicts of interest with the estate.[19]

An examination of these fiduciary duties to the estate reveals that they arise from either the role of counsel for the debtor-in-possession as an officer of the court or the derivative nature of the fiduciary obligations owed by counsel to its client, the debtor-in-possession.

In contrast, some courts have concluded that counsel for the debtor-in-possession does not owe fiduciary duties to the bankruptcy estate, its beneficiaries, or its creditors. *In re Sidco, Inc.*, 173 B.R. 194 (E.D.Cal.1994) (rejecting the argument that counsel for the debtor-in-possession owes a general fiduciary duty to the estate). One case in particular, *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434 (D.Utah 1998) (finding that the debtor's counsel owes no fiduciary duty to the estate), provides an extensive survey of the law and a well-reasoned analysis of the relationships among the parties in a bankruptcy case:

The "fiduciary duty to the estate" language interspersed throughout the above-cited opinions is no doubt intended to impress on counsel for debtor-in-possession his/her obligation to assist the debtor-in-possession in carrying out its responsibility to act in the best interest of the estate. However, the confusion wrought by this undefined duty and its intended obligee outweighs its utility. The strict prohibition of conflict of interest and overreaching by counsel and the disclosure requirements under the Bankruptcy Code layered over counsel's ethical responsibilities to the fiduciary client debtor-in-possession generally mandate this result. The ultimate assurance, though, lies in the bankruptcy court's assessment of counsel's compensation under 11 U.S.C. § 330(a).

*Hansen*, 220 B.R. at 465.

▉ Courts and commentators finding no fiduciary duty extending from counsel for the debtor-in-possession to the estate or creditors rely in part on the fact that neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure impose such a duty. *See Hansen*, 220 B.R. at 451–61. Although the Bankruptcy Code imposes a fiduciary duty on a debtor-in-possession, 11 U.S.C. §§ 323, 1107, the Code contains no corresponding provision for attorneys who represent a debtor-in-possession.

**15.** *In re Pacific Forest Indus., Inc.*, 95 B.R. 740, 744 (Bankr.C.D.Cal.1989).

**16.** *In re JLM, Inc.*, 210 B.R. 19, 26 (2nd Cir. BAP 1997).

**17.** *In re Swansea Consolidated Resources*, 155 B.R. 28, 38 n. 14 (Bankr.D.R.I.1993).

**18.** *In re Keene Corp.*, 205 B.R. 690, 691 (Bankr.S.D.N.Y.1997).

**19.** *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (10th Cir. BAP 1997).

The cases cited by ICM Notes do not support a finding that counsel for the debtor owes particular fiduciary duties to the estate or its creditors.[20] The language in these cases referencing a duty to the estate or the creditors is often included without analysis or elaboration by the court and is cited in conjunction with the traditional bankruptcy concepts of a breach of counsel's fiduciary duty to the client debtor-in-possession or counsel's failure to provide services which benefit the estate. ICM Notes contends that A & K owed it a particular fiduciary duty based on cases that are grounded in principals relating to the retention and compensation of bankruptcy professionals, including conflict of interest rules. Fiduciary duties established by the courts in these contexts do not lend support for the type of breach alleged in the instant case. For example, in *In re Adam Furniture Indus., Inc.*, 158 B.R. 291 (Bankr.S.D.Ga.1993), the court's statement that debtor's counsel is charged with insuring that the rights of creditors are protected is made in the context of the court's disqualification of a law firm from employment as debtor's counsel because the law firm held an interest adverse to the estate. *Id.* at 300–01. The court concluded that a conflict of interest existed because the law firm representing the debtor received fees for postpetition services from entities against whom avoidance and recovery actions might be instituted in an attempt to recover assets for the estate.

*Id.* at 300. The "fiduciary duties to the estate" and "rights of creditors" referred to the conflict counsel would have encountered in a determination of whether to sue entities from which it derived income.

Another example is *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D.Cal.1991). ICM Notes relies on the following statement from *In re Wilde Horse:* "Because the attorney for debtor in possession is a fiduciary of the estate and an officer of the Court, the duty to advise the client goes beyond responding the client's requests for advice. It requires an *active* concern for the interests of the estate, and its beneficiaries, the unsecured creditors." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 840. This decision involves a denial of compensation for a Chapter 11 debtor's attorney based on a conflict of interest. Immediately following the above quotation, the court continues: "Consequently, the attorney may not simply close his or her eyes to matters having a legal and practical consequence for the estate—especially where the consequences may have an adverse effect. The attorney has the duty to remind the debtor in possession, and its principals, of its duties under the Code, and to assist the debtor in fulfilling those duties." *Id.* The *In re Wilde Horse Enterprises* court used "fiduciary to the estate" in reference to the attorney's duty to advise his client. These cases do not provide a foundation for a fiduciary duty running directly from the

---

**20.** ICM Notes relies in part on the language of *Everett v. Perez*, 30 F.3d 1209, 1219 (9th Cir. BAP 1994):

> Counsel for the estate must keep firmly in mind that his client is the estate and not the debtor individually. Counsel has an independent responsibility to determine whether a proposed course of action is likely to benefit the estate or will merely cause delay or produce some other procedural advantage to the debtor.

This case, however, has been criticized for failing to define "duty to the estate" and for "betraying a surprising naivete regarding the workings of bankruptcy cases." C.R. Bowles, Jr. & Nancy B. Rapoport, *Has the DIP's Attorney become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?*, 5 Am. Bankr.Inst.L.Rev. 47, 83–85 (1997) (stating that "the Ninth Circuit demonstrated a basic misunderstanding of the absolute priority rule and dabbled in just enough bankruptcy theory to be dangerous").

debtor's counsel to a particular creditor. ICM Notes has not provided any precedent going beyond the general finding of a fiduciary duty to the estate that primarily serves as an extension of the duty of the debtor to the estate or the duty of the debtor's counsel to the court.

In addition, ICM Notes offers *Newport Acquisition Co. No. 1, L.L.C. v. Schiro (In re C–Power Products, Inc.)*, 230 B.R. 800 (Bankr.N.D.Tex.1998), for its conclusion that the court would allow a creditor to prosecute claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the debtor's counsel.[21] The Court finds this case inapposite, as the claims appear to arise from alleged violations of the conflict of interest rules in 11 U.S.C. §§ 327, 328 rather than a breach of a common law fiduciary duty as is the case here. *See id.*

 Furthermore, in a bankruptcy proceeding, the debtor, secured creditors, unsecured creditors, and other related parties have different and competing interests. *Hansen*, 220 B.R. at 459–61. The Bankruptcy Code requires that a debtor's attorney be disinterested and not represent the interest of any party to the bankruptcy case other than the debtor.[22] 11 U.S.C. § 324. The Code contains prohibitions against conflicts of interest and re-

quires that compensation be paid from an estate only if the services provided by counsel benefit the estate. 11 U.S.C. §§ 327, 328. A finding that debtor's counsel owes a particular duty to an individual creditor in a Chapter 11 bankruptcy proceeding would prevent counsel from representing his client in accordance with the provisions of the Bankruptcy Code. Further, ICM Notes was an adverse party to ICM, Inc., the debtor, and was fully represented by its own counsel during the course of the bankruptcy proceedings. A ruling that counsel of a debtor-in-possession owes a fiduciary duty to a particular creditor is contrary to the tenet of the Bankruptcy Code mandating that debtor's counsel be disinterested. Therefore, the Court finds that counsel for a debtor-in-possession does not owe any fiduciary duties to a particular creditor.

Given the foregoing, the Court concludes that A & K did not owe a fiduciary duty directly to ICM Notes.[23] Summary judgment is therefore granted in favor of A & K on the issue of breach of fiduciary duty.

**B. Tortious Interference**

 A & K briefly asserted in its motion for summary judgment that its act of sending the December 30, 1998 letter could not constitute tortious interference as a

---

**21.** In *C–Power Products,* Crossroads Capital Partners, L.L.C. ("Crossroads") acquired a claim against C–Power Products and proposed a reorganization plan in which a subsidiary of Crossroads, Newport Acquisition Co. No. 1, L.L.C. ("Newport") would acquire certain of C–Power Products' assets and pay certain of its liabilities, including the professional fees. *In re C–Power Products, Inc.,* 230 B.R. at 802. Crossroads' plan was confirmed over a competing plan proposed by C–Power Products. Newport then brought claims for negligence, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty against C–Power Products' attorney, Richard Schiro, claiming that Newport had paid too

much for C–Power Products' assets as a result of the alleged breach of duty. The bankruptcy court found that Newport's assumption of responsibility for payment of professional fees allowed it to object to Schiro's fee application.

**22.** In this regard, A & K asserts that "it was not required—and in fact was forbidden—to represent the interests of ICM, Inc.'s secured lender and purchaser."

**23.** Because the Court finds that A & K owed no duty, it is not necessary to address A & K's alternative grounds for summary judgment on the breach of fiduciary duty claim.

matter of law. The cause of action for tortious interference is based on a claim that A & K wrongly induced its client, the Debtor and Seller, to breach the Plan. The Court determines that genuine issues of material fact exist regarding the tortious interference claim. Accordingly, summary judgment is inappropriate regarding this claim. Accordingly, the Court hereby

ORDERS that Defendant's Motion for Summary Judgement (Instrument # 34) is GRANTED IN PART AND DENIED IN PART. ICM Notes' claim against A & K for breach of fiduciary duty is DISMISSED. All relief not expressly granted herein is DENIED.