**In re The PHOENIX GROUP CORPORATION, and Americare Management, Inc., Debtors.**

No. 02–47107–DML–11, 02–47106–DML–11.

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Nov. 14, 2003.

Robert N. Michaelson, Robert Wolin, Kirkpatrick & Lockhart, New York City, Michael D. Donohue, Friedman & Feiger, LLP, Dallas, TX, for Debtors.

Erin Schmidt, Office of U.S. Trustee, Dallas, TX, U.S. Trustee.

1. Debtors individually will be referred to herein as "Phoenix" and "Americare."

2. Debtors were the only parties continuing to object to the Application. Because payment

*Memorandum Opinion and Order*

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before the court is Debtors'[1] objection (the "Objection") to the Fee Application of Kirkpatrick & Lockhart, LLP as Counsel for the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses (as supplemented) (the "Application"). Kirkpatrick & Lockhart ("K & L") filed its original Application on July 2, 2003. Debtors filed the Objection on July 25, 2003. K & L supplemented the Application on July 31, 2003, to request payment of the cost of preparing the Application.

The court initially considered the Application at a hearing on August 5, 2003, in which Debtors participated. Following that hearing, K & L having satisfied concerns expressed by the United States Trustee and other parties in interest, the court, by order of August 6, 2003, subject to later consideration of the Objection, granted the Application, finding that "K & L is entitled to payment of fees and reimbursement of expenses in the total amount of $148,482.38 ... to which the prepetition retainer received by K & L from the Debtors in the net amount of $66,617.15 shall be applied, thereby resulting in a net ... payment to K & L by the Debtors of $81,865.23 which ... the Debtors are ... authorized and directed to pay to K & L upon confirmation of a plan of reorganization ...."

On September 9, 2003, a hearing was held on confirmation of Debtors' plan and an order confirming the plan was entered on September 16, 2003.[2] Thus, on October 27, 2003, the court held a hearing on the

of K & L could only occur if a plan was confirmed, the court deferred consideration of the Objection until that precondition was met.

Objection. Ron Lusk, a principal of Debtors, testified in support of the Objection. Robert Michaelson and Robert Wolin, both partners at K & L, testified in support of the Application.[3] The court also incorporated into the record prior proceedings in these chapter 11 cases and proceedings in the chapter 11 cases of Interlink Home Health Care, Inc. ("Interlink") and its subsidiaries.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334(a) and 157(b)(2)(A).[4] This memorandum opinion comprises the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052, *made applicable by* FED. R. BANKR. P. 9014.

## I. Background

The genesis of the Objection is to be found in a dispute between Debtors and Intrepid of Texas, Inc. ("Intrepid") over ownership of Interlink and control of Interlink's chapter 11 case.[5] In the Objection Debtors complain that K & L failed to protect Debtors' ownership rights in Interlink and did not, as instructed, seek appointment of a Chapter 11 trustee for Interlink.

The salient facts regarding the ownership dispute are reported elsewhere[6] and need not be repeated here. Suffice it to say that the court considered the relative rights of Intrepid and Debtors in relation to Interlink on two occasions. First, in connection with a motion to dismiss or appoint a trustee in the Interlink case, the court concluded Intrepid had a prima facie right to control Interlink. Second, in connection with adversary proceedings commenced by each of Intrepid and Americare, the court reserved three days to try the questions of ownership and control and received evidence for part of one day (Debtors rested after only a brief presentation) on the basis of which the court made findings of fact and conclusions of law regarding ownership and control of Interlink.[7] It was through its control of Interlink that Intrepid was able to propose and confirm a plan which vested post-confirmation ownership of Interlink in Intrepid.

As to appointment of a trustee for Interlink, the court considered and rejected that option following the hearing of July 18 and 19, 2002. Instead, the court directed appointment of an examiner, and the United States Trustee named William Burke ("Burke") to that position a few days later. On July 29, 2002, Americare filed an emer-

3. At the commencement of the October 27 hearing, Debtors moved that Gerrit Pronske ("Pronske"), another partner at K & L, be disqualified from participating. The court heard testimony from Pronske and James Poss, an officer of Debtors, respecting this question. Their testimony is not relevant to consideration of the Objection.

4. Hereafter, references to Title 11 will be to the "Bankruptcy Code" or "Code."

5. The chapter 11 cases of Interlink and its subsidiaries are one of two groups of cases related to Debtors' chapter 11 cases. The other cases, Lifeline Home Health Care, Inc., and Lifeline Managed Care, Inc., do not play an important role in the matter now before the court.

6. *See In re Interlink Home Health Care, Inc.,* 283 B.R. 429, 431–33 (Bankr.N.D.Tex.2002).

7. The court's findings and conclusions disposing of the control issue were not published but are on file at the office of the Clerk of United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, entered November 20, 2002, as *Intrepid of Tex., Inc. v. Americare Mgmt., Inc. (In re Interlink Home Health Care, Inc.),* Adversary Case No. 02–4200, Docket No. 26, and *Americare Mgmt., Inc. v. Intrepid of Tex., Inc. (In re Interlink Home Health Care, Inc.),* Adversary Case No. 02–4196, Docket No. 33. The court held that Americare owned the stock of Interlink but that Intrepid controlled the stock through a proxy.

gency motion asking that the court remove Burke as examiner. Following a hearing on August 7, 2002, the court concluded the allegations made by Americare is support of its motion to remove Burke were not supported by the evidence and denied Americare's motion.[8] Burke continued to serve as examiner in the Interlink case until after confirmation of Interlink's plan of reorganization.

Americare (and Phoenix) had been represented in the Interlink case through the hearing on the motion to remove the examiner by the Dallas firm of Godwin Gruber, P.C. ("Godwin"). Following denial of the motion to remove the examiner, Americare temporarily ceased using Godwin. After involvement of one or two other counsel, Americare retained as lead counsel in pending adversary proceedings, including those that ultimately disposed of the issue of control of Interlink, Houston & Shalady of Fort Lauderdale, Florida.

In the meantime, Debtors filed their own chapter 11 cases in the District of Delaware on August 21, 2002. *See In re Interlink*, 283 B.R. at 432. K & L was retained by Debtors as counsel in their bankruptcy cases, and K & L continued in that role after the court directed transfer of Debtors' cases to the Northern District of Texas.

On December 5, 2002, the court ordered appointment of an examiner in Debtors' cases. On December 6, 2002, David Obergfell ("Obergfell") was appointed as Debtors' examiner. Though Obergfell's duties were initially limited to policing Debtors' transactions with related parties and assessing Debtors' viability, Obergfell's role was later expanded by this court's orders of December 12, 2002, and February 27, 2003, and as described below.

On January 17, 2003, K & L filed a motion seeking leave to withdraw as Debtors' bankruptcy counsel. In that motion K & L asserted that it had "fundamental differences with the Debtors regarding the course and conduct of [their] cases ...." The court considered K & L's motion on January 28, 2003, but denied the relief, because K & L's withdrawal would have left Debtors, both corporations, without counsel. *See, e.g., Goldstein v. Ill. Sec. Agency (In re Just for Feet, Inc.)*, 299 B.R. 343, 349–50 (Bankr.D.Del.2003) (agreeing that the law is well settled that a corporation may not participate in proceedings in federal court unless represented by an attorney); *Commodities Futures Trading Comm'n v. United States Sec. & Futures Corp.*, No. 03 Civ. 2258(KMW)(MHD), 2003 U.S. Dist. LEXIS 13743, at *1 (S.D.N.Y. Aug. 7, 2003) (concluding that a defendant corporation cannot participate in a lawsuit unless represented by an attorney).

On March 20, 2002, K & L renewed its motion to withdraw. In the renewed motion, K & L asserted that "Debtors, and in particular the Debtors' principal, Ronald E. Lusk ..., have demanded that K & L take actions and pursue strategies that K & L believes are legally and/or ethically improper ...." Following a hearing on the renewed motion on March 25, 2003, the court on April 3, 2003, entered an order authorizing K & L to withdraw upon entry of an order authorizing Godwin[9] to serve as counsel to Debtors. Because Godwin was not willing to represent Debtors other than in the plan process,[10] the court ex-

---

**8.** The court thereafter denied Americare's motion to reconsider that ruling.

**9.** During the March 25 hearing a representative of Godwin advised the court that Godwin was prepared to undertake representation of Debtors to file a plan of reorganization.

**10.** Godwin in fact filed Debtors' initial draft disclosure statement and plan on March 24,

panded Obergfell's duties by order of April 21, 2003, to include oversight of Debtors in all respects other than formulation and pursuit of confirmation of a plan. One effect of the April 21 order was to complete the divorce of K & L from Debtors.

In the Interlink case, a plan had been filed. The last date for objecting to confirmation of Interlink's plan was May 7, 2003. On April 30, 2003, Debtors filed an application seeking to employ Friedman & Feiger, L.L.P. ("F & F"),[11] for specified purposes, including objecting to confirmation of the Interlink plan and seeking appointment of a trustee for Interlink. Debtors sought emergency consideration of the application.

On May 1, 2003, the court entered a Memorandum Order providing Debtors with limited authority to employ F & F. Specifically, the court ordered that F & F could object to Interlink's plan only on the basis that Americare's equity interest was being eliminated in violation of Bankruptcy Code section 1129(a)(7) or section 1129(b)(2)(C). Debtors next sought emergency consideration of an amended application to employ F & F. The court declined to consider further F & F's application by a May 7 order.[12]

Subsequently, F & F has assumed responsibility for representing Debtors for many purposes. Indeed, F & F filed the Objection on behalf of Debtors and prosecuted it during the October 27 hearing.

## II. Discussion

### A. Debtors Limited to Prosecuting the Objection

During the October 27 hearing, Debtors questioned Michaelson about time entries in the Application. However, the court's order of August 6, 2003, approved the Application except for the Objection. The Objection raises only two issues: (1) whether K & L improperly failed to object to the Interlink plan; and (2) whether K & L improperly failed to pursue appointment of a trustee in the Interlink case.[13] All other possible issues surrounding the Application were disposed of by the court's August 6, 2003, order.

### B. The Objection

■ In considering the Objection the court has kept in mind aspects of Debtors' conduct which would raise questions concerning Debtors' complaints about K & L even in the absence of other evidence. First, Debtors do not appear to get along well with attorneys. Not only have Debtors had difficulty maintaining representation before this court, Phoenix lists among its twenty largest creditors *six law firms*.

Moreover, Debtors typically have promised much in anticipation of trial and have delivered little. At least two examples of this are reflected in the court's record. First, Americare assured the court that the stock pledge agreement which was key to Intrepid's control of Interlink was inval-

---

2003, and so was arguably acting by then on behalf of Debtors.

**11.** Obergfell objected to retention of F & F. One of the court's conditions to employment of F & F was proof that Debtors could satisfy their administrative expenses. Ultimately, Debtors (through Lusk) satisfied this condition.

**12.** Notwithstanding the court's disposition of Debtors' employment of F & F, nothing pre-

vented Lusk or one of his other entities from filing an objection to Interlink's plan on any basis. In fact, Lusk did not participate in the hearing confirmation of the Interlink plan.

**13.** K & L actually filed a motion to appoint a trustee in the Interlink case. The motion, however, was not pursued, according to Michaelson because his investigation of the allegations in the motion convinced him it could not be successfully prosecuted.

id. Americare maintained the stock pledge agreement was forged or fraudulently obtained and that it was granted in connection with an unfunded loan. However, neither on July 18 or 19, 2002, nor at trial of the adversary proceedings between Intrepid and Americare did Americare present proof of these contentions. Following the July 2002 hearing, the argument that the loan was not funded was effectively abandoned. Nor was any meaningful evidence ever offered in support of the invalidity of the stock pledge agreement.

Similarly, the emergency motion to remove Burke as examiner in the Interlink case alleged wrongdoing that was controverted in Burke's verified response. At the hearing on the motion, Americare did not come close to proving its allegations. Both of these instances lend credence to K & L's contention that Lusk demanded that K & L take inappropriate positions on behalf of Debtors.

 Turning, then, to the bases of the Objection,[14] the court, in determining whether K & L's compensation should be reduced, must assess whether K & L failed to perform its duties as counsel to Phoenix and Americare as debtors in possession. In this determination the court must consider whether K & L's failure to carry out the tasks Lusk assigned it is excused. Counsel to a debtor in possession cannot be expected to perform functions inconsistent with the debtor's fiduciary duties and counsel's own fiduciary duties to the estate. See ICM Notes, Ltd. v. Andrews & Kurth, 278 B.R. 117, 123 (S.D.Tex.2002) (concluding that attorney for debtor-in-possession owes a general fiduciary duty to preserve the bankruptcy estate); Zeisler & Zeisler v. Prudential Ins. Co. of Am. (In

re JLM, Inc.), 210 B.R. 19, 25 (2d Cir. BAP 1997) (determining that "[b]oth management and its counsel have fiduciary duties to an estate in bankruptcy"); In re Sky Valley, Inc., 135 B.R. 925, 929 (Bankr. N.D.Ga.1992) (discussing a debtor's attorney's duty as a fiduciary of the estate). If counsel was required to act illegally, unethically or contrary to fiduciary responsibilities, counsel cannot be penalized for failing to comply with such requirements. See ICM, Inc., 278 B.R. at 125 (explaining that a debtor's attorney "may not simply close his or her eyes to matters having a legal and practical consequence for the estate-especially where the consequences may have an adverse effect"). In determining whether conduct would be illegal, unethical or contrary to fiduciary responsibilities, after giving due deference to the views of management, a law firm may rely on its professional judgment. See Henkel v. Lickman (In re Lickman), 297 B.R. 162, 202 (Bankr.M.D.Fla.2003) (determining that attorney had ethical obligation to employ professional judgment to consider the plausibility and appropriateness of client's desires); Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1327 (11th Cir. 2002) (finding that an attorney must exercise professional judgment to determine whether client's objectives are lawful and ethical).

The court will first address whether K & L wrongfully failed to pursue appointment of a trustee in the Interlink case. The court concludes from the evidence before it that K & L, in the exercise of professional judgment, correctly determined that Debtors, acting as fiduciaries for their creditors and equity owners, should not pursue appointment of a trustee for Interlink. First, Americare had failed to prevail on such a motion at the commencement of

14. The allegations in the Objection are the same as those Debtors propose, under their plan, to pursue in litigation against K & L.

Interlink's chapter 11 case. Second, Burke, serving as examiner in the Interlink case, was monitoring management of Interlink. Burke never indicated that he would support appointment of a trustee, and Michaelson would have known this. Third, Obergfell subsequently opposed retention of F & F to seek appointment of a trustee in the Interlink case. Fourth, Michaelson testified that his own investigation did not uncover evidence that would support appointment of a trustee. Finally, K & L prepared and filed a motion for appointment of a trustee for Interlink in December 2002. If that motion had been well-grounded, it would have garnered support from Burke, Obergfell and the United States Trustee. The court infers from the absence of such support that those parties considered the motion without merit.

The court now turns to K & L's failure to object to Interlink's plan. Again, the court finds in the record no basis for objection to K & L's conduct. First, by March 25, 2003, long before the deadline for objecting to the Interlink plan, Debtors were aware K & L was withdrawing from its representation of them. It is not at all clear that the timing of K & L's withdrawal was not such as to preclude or at least impair K & L's ability to act for Debtors in connection with the Interlink plan. Second, as reflected in the Objection, Debtors' reason for objecting to the Interlink plan was to "preserve" its "rights" to pursue Intrepid in connection with the latter's takeover of Interlink. Yet, Debtors have had their day in court on those issues. Moreover, even if some potential cause of action by Americare against Intrepid survived the earlier proceedings in this court, the court has been presented with no basis for Debtors' apparent assumption that confirmation of Interlink's plan wiped out such a cause of action. If Intrepid fraudulently obtained control of Interlink at Debtors' expense, confirmation of Inter-

link's plan would not bar claims against Intrepid. *See* Code § 524(e). The equity interest in Interlink held by Americare that was eliminated under the Interlink plan was so eliminated (under the eyes of two examiners) because Interlink's value was insufficient to provide return to its equity owner, Americare. *See* Code §§ 1129(a)(7) and 1129(b)(2)(C).

### III. Conclusion

Debtors have presented the court with no viable basis for denial of K & L's fees. From the record in these cases, the court has ample reason to believe the testimony of K & L's lawyers and disbelieve the testimony of Lusk.

Godwin holds in its trust account sufficient funds to pay K & L. Based on this court's order of August 6, 2002, and its instant determination that the Objection is without merit, K & L's Application is now approved. Godwin, therefore, on behalf of Debtors, shall issue to K & L a check in the amount of $81,865.23.

It is so ORDERED.